HANS MENG *et al.*, Plaintiffs-Appellants, v. MAYWOOD PROVISO STATE BANK *et al.*, Defendants-Appellees (Greater Illinois Title Insurance Company, Defendant).—HANS MENG *et al.*, Plaintiffs-Appellants, v. ALBANY BANK AND TRUST COMPANY, N.A., a/k/a Albank, Defendant-Appellee.

First District (5th Division)   Nos. 1—97—3288, 1—97—3289 cons.

Opinion filed October 16, 1998.

Leon C. Wexler, of Chicago, for appellants.

Clausen, Miller, P.C., of Chicago (James T. Ferrini, Gilbert J. Schroeder, Mark E. Wilson, and Melinda S. Kollross, of counsel), for appellee Maywood Proviso State Bank.

Paul T. Fox, Jeffrey H. Hornstein, and Raquel daFonseca, all of Holleb & Coff, of Chicago, for appellee Albany Bank and Trust Company.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs Hans Meng and Klaus A. Wieske purchased three cashier's checks from defendant Albany Bank & Trust Company, N.A., a/k/a Albank (Albank), which subsequently were honored by three separate institutions (defendants Maywood Proviso State Bank, First Security Trust & Savings Bank, and Greater Illinois Title Insurance Company[1]). Plaintiffs made two of the cashier's checks payable to

---

[1]Greater Illinois Title Insurance Company did not appear or participate

John Parolin and David Kelly, who is a fictional person. The third cashier's check was payable to one of the plaintiffs, who specially indorsed it to Parolin and the fictitious Kelly. Parolin indorsed each cashier's check with his name and the name of Kelly, cashed the checks and absconded with the funds.

Plaintiffs first filed a complaint against Albank, asserting a breach of contract claim. Upon the trial court's granting summary judgment in favor of the bank, plaintiffs filed a complaint against the three institutions that separately honored the cashier's checks, which was dismissed by the trial court for failure to state a cause of action.

This consolidated appeal raises three issues: (1) whether the fictitious payee rule codified in section 3—404(b)(ii) of the Uniform Commercial Code (Code) (810 ILCS 5/3—404(b)(ii) (West 1994)) precludes plaintiffs' breach of contract claim against the bank (Albank) that issued the cashier's checks; (2) whether a cashier's check that names two payees, absent any instructions as to whether they are joint payees or alternate payees, constitutes an ambiguous instrument, which is deemed to be payable in the alternative under section 3—110(d) of the Code (810 ILCS 5/3—110(d) (West 1994)); and (3) whether plaintiffs' negligence claim against the institutions that honored the cashier's checks is precluded under section 3—404(d) of the Code (810 ILCS 5/3—404(d) (West 1994)). We answer each issue in the affirmative and, thus, affirm both orders from the trial court.

In 1995, plaintiffs wanted to purchase a building located at 712 West Diversey in Chicago, Illinois. The building was in foreclosure and a federal government agency (United States Department of Housing and Urban Development (HUD)) held the mortgage. To accomplish the purchase, plaintiffs retained John F. Parolin, an attorney who has since been disbarred. Parolin advised plaintiffs that, before HUD would consider plaintiffs as a potential purchaser, plaintiffs were required to establish a fund in the amount of the purchase price by obtaining cashier's checks. Parolin further advised plaintiffs that the cashier's checks must be made payable to himself and David L. Kelly, an alleged HUD employee who was authorized to make the sale. In fact, David L. Kelly does not, and never did, exist. David L. Kelly is a fictional person.

Plaintiffs purchased the following three cashier's checks from Albank, totaling $712,500: (1) $350,000; payable to Klaus Wieske; dated March 1, 1995; check No. 404885; (2) $125,000; payable to David L. Kelly and John Parolin; dated May 24, 1995; check No. 407067; and

in the proceedings in the trial court and has not filed any documents in the appellate court.

(3) $237,500; payable to David L. Kelly and John F. Parolin; dated June 26, 1995; check No. 410255. Plaintiffs delivered each check to Parolin.

The first check was specially indorsed by Klaus Wieske in the following manner:

EARNEST MONEY FOR 712 DIVERSEY

PAY TO THE ORDER OF :

JOHN F. PAROLIN

DAVID. L. KELLY

All three cashier's checks were cashed by Parolin at defendants Maywood Proviso State Bank (check No. 1), First Security Trust & Savings Bank (check No. 2), and Greater Illinois Title Insurance Company (check No. 3), respectively. When cashed, each check bore the signatures of both Parolin and Kelly, the fictional person. Upon presentment, Albank made payment on the three checks.

### Appeal No. 1—97—3289 (Albank)

On May 24, 1996, plaintiffs filed a complaint against Albank, alleging that Albank breached a contract with plaintiffs by making payment on the cashier's checks without the indorsement of David L. Kelly. Plaintiffs alleged that the cashier's checks were issued by Albank with the agreement that the checks had to be indorsed by both Parolin and Kelly, as payees, before Albank would make payment on the checks. Plaintiffs further alleged that Kelly never indorsed the checks and that Parolin forged the indorsement of Kelly. Thus, plaintiffs contended that "the payment of the checks without the indorsement of David L. Kelly was a breach of the contract between the Plaintiffs and" Albank.

On December 9, 1996, Albank filed a motion for summary judgment, asserting that it had paid the cashier's checks in the ordinary course of business, in good faith and without knowledge that Kelly was a fictitious payee. To its motion, Albank attached an affidavit from the personnel assistant at HUD in the Chicago regional office, who attested that no one by the name of David Kelly or David L. Kelly was employed by HUD in the entire United States during the time period 1994 through 1996. Albank contended, and the trial court agreed, that the fictitious payee rule completely absolves a bank from any liability for payment over a forged indorsement.

On February 5, 1997, the trial court entered summary judgment in favor of Albank, finding that Albank was only the nominal drawer of the subject cashier's checks, that plaintiffs were the drawers of the checks, and that Albank properly paid the disputed items pursuant to the Code (810 ILCS 5/3—404(b)(ii) (West 1994)). On August 4, 1997, the trial court denied plaintiff's motion to reconsider the summary judgment for Albank.

### Appeal No. 1—97—3288 (Maywood Bank)

On February 26, 1997, plaintiffs filed a complaint against the three defendant institutions that cashed the three cashier's checks, alleging that defendant institutions failed to exercise ordinary care in paying or taking the instruments under section 3—404(d) of the Code (810 ILCS 5/3—404(d) (West 1994)). Both Maywood and First Security filed section 2—615 motions to dismiss (735 ILCS 5/2—615 (West 1996)), for failure to state causes of action based on the Code.

On August 6, 1997, the trial court dismissed plaintiffs' complaint with prejudice as to all three named defendants. Regarding the dismissal motions filed by Maywood and First Security, the trial court specifically found that plaintiffs' complaint failed to state a claim for breach of warranty under the Code (810 ILCS 5/3—416, 3—417, 4—207, 4—208 (West 1994)) and, even if ordinary care was not exercised, the failure could not have, as a matter of law, "substantially contribute[d] to loss resulting from payment of the instrument" under section 3—404(d) of the Code (810 ILCS 5/3—404(d) (West 1994)). In addition, the trial court found that the indorsement of Parolin alone sufficed to make the check negotiable because the cashier's check was alternatively payable to Parolin or Kelly under section 3—110(d) of the Code (810 ILCS 5/3—110(d) (West 1994)).

■ The first issue on appeal is whether the fictitious payee provision in the Code bars plaintiffs' breach of contract claim against the bank (Albank) that issued and subsequently paid the cashier's checks upon presentment. We apply a *de novo* standard of review to summary judgment rulings. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Moreover, where no factual issues are raised on appeal, the sole question on review is whether the trial court's entry of summary judgment is proper as a matter of law. *McNamee v. State of Illinois*, 173 Ill. 2d 433, 438 (1996).

Plaintiffs assert that the issuer of a cashier's check (*i.e.*, Albank) is obligated under an implied contract to pay the payees (Parolin and Kelly) named by the remitter (plaintiffs) on the checks or to return the checks to the remitter. Plaintiffs argue that the Code does not effectively deal with the rights and obligations of the remitter of a cashier's check in relation to the issuer.

■ We agree with plaintiffs that an enforceable contract arises when a cashier's check is purchased and the contract calls for the issuing bank to pay the instrument according to its terms. *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 836 (Minn. Ct. App. 1994) (and cases cited therein). The implied contract is the issuing bank's promise to pay the cashier's check to the named payee only. *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1546 (9th Cir. 1996). The Code, in fact, authorizes the use of contract or equity claims where the Code does not cover a particular topic or transaction. Section 1—103 expressly provides that "[u]nless displaced by the particular provisions of this Act, the principles of law and equity *** shall supplement its provisions." 810 ILCS 5/1—103 (West 1994).

Under the facts of the present case, however, we disagree with plaintiffs' contention that the Code does not deal with the relationship between the issuing bank and the remitter of a cashier's check. The dispositive fact in the present case is that the cashier's checks bore the forged signature of a fictitious payee, David Kelly. The Code specifically addresses the situation involving such a payee.

■ Section 3—404 of the Code is entitled "Impostors-Fictitious payees." Section 3—404(b)(ii), in relevant part, is as follows:

"(b) If *** (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:

(1) Any person in possession of the instrument is its holder.

(2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who in good faith, pays the instrument or takes it for value or for collection." 810 ILCS 5/3—404(b) (West 1994).

This particular provision is the Illinois codification of the fictitious payee rule. It became effective in 1992, when it was revised and renumbered from section 3—405. 810 ILCS Ann. 5/3—404, Uniform Commercial Code Comment, at 209 (Smith-Hurd 1993).

As specifically stated in section 3—404(b)(ii) of the Code, where a named payee is a fictitious person, then the "indorsement by any person in the name of the payee *** is effective as the indorsement of the payee." 810 ILCS 5/3—404(b)(ii) (West 1994). A forged indorsement of a fictional payee is an exception to the general rule that places liability on a bank that pays over a forged indorsement. See *In re Ostrom-Martin, Inc.*, 188 B.R. 245, 250 (Bankr. C.D. Ill. 1995).

The statutory fictitious payee rule relieves a bank from liability for honoring a check bearing the forged indorsement of a fictional payee by deeming the forged indorsement to be effective. 810 ILCS 5/3—404 (West 1994). The drawer of the checks in such a scenario suf-

fers the loss because the drawer is in the best position to avoid the loss. The Uniform Commercial Code Comment to section 3—404 specifically explains this rationale:

"If a check payable to an impostor, fictitious payee *** is paid, the effect of subsections (a) and (b) is to place that loss on the drawer of the check rather than on the drawee or the Depositary Bank that took the check for collection. *** [F]raud is almost always involved in cases governed by subsection (b). The drawer is in the best position to avoid the fraud and thus should take the loss." (810 ILCS Ann. 5/3—404, Uniform Commercial Code Comment, at 211 (Smith-Hurd 1993)).

Plaintiffs direct attention to the *Lassen* case, which is factually distinguishable from the instant case because *Lassen* did not involve a fictitious payee. The issuing bank in *Lassen* breached its contract with the purchasers of the cashier's checks because it did not pay the cashier's checks in accordance with its terms, which provided that the checks were payable to two joint copayees. The issuing bank erroneously honored the checks on the indorsement of only one copayee. *Lassen*, 514 N.W.2d at 836. In contrast, the issuing bank in the present case (Albank) fulfilled its contract with plaintiffs because the cashier's checks were made payable to two copayees and, indeed, contained the indorsements of the two named copayees (Parolin and Kelly). In all other respects, the *Lassen* decision accords with our findings.

A case more on point is *Lewis*, which involved cashier's checks and fictitious payees. *Lewis*, 87 F.3d 1537. In *Lewis*, two elderly women were separately swindled out of hundreds of thousands of dollars by fraud artists who persuaded the victims to write numerous checks for the alleged purpose of investment in valuable coins and gems. The victims prepared numerous checks in the form of personal, teller's and cashier's checks. The victims sued various banks that had sold, collected or paid the checks. *Lewis*, 87 F.3d at 1542.

For the banks that had issued the cashier's check to fictitious payees, the *Lewis* court applied the fictitious payee rule, which was then codified under section 3—405, the former imposter provision, and held that the complaint could not state a claim upon which relief could be granted. *Lewis*, 87 F.3d at 1545. The court found that banks that sell cashier's checks are both the drawer and drawee of the checks. *Lewis*, 87 F.3d at 1546; accord *Lassen*, 514 N.W.2d at 836. The purchasers of the cashier's checks are the drawers. *Lewis*, 87 F.3d at 1548. Under the language and policy of the impostor provision, the forged signatures of the payees are considered effective and "the drawer bears the loss from the check because the drawer was the party most

directly duped by the imposter and the party in the best position to avoid the loss." *Lewis*, 87 F.3d at 1550.

■ We find the *Lewis* decision persuasive and in accord with the language and policy of section 3—404(b)(ii) of the Code in Illinois. A forged indorsement of a fictional payee invokes the fictitious payee rule and places the loss on the drawer of a cashier's check, not the issuing bank. Thus, we find that summary judgment in favor of Albank was proper.

We further observe that, to the extent plaintiffs rely on the 1931 case of *United States Cold Storage Co. v. Central Manufacturing District Bank*, 343 Ill. 503 (1931), such reliance is misplaced. As noted in two subsequent decisions, the holding in *Cold Storage Co.* was rejected by the legislature when it amended the then-existing negotiable instrument law in 1931. See *People v. Dauphin*, 53 Ill. App. 2d 433 (1964); *Houghton Mifflin Co. v. Continental Illinois National Bank & Trust Co.*, 293 Ill. App. 423 (1938).

Second, plaintiffs assert that there was no ambiguity to invoke the alternative payee method of payment in the cashier's check that was made payable to Klaus Wieske who, in turn, specially indorsed the back of the check as follows:

"EARNEST MONEY FOR 712 DIVERSEY
Pay to the order of:
    John F. Parolin
    David L. Kelly
Klaus A. Wieske [signature]
David L. Kelly [signature]
John F. Parolin [signature]."

Plaintiffs argue that the form of this indorsement is not ambiguous but rather requires that the cashier's check be paid jointly, not in the alternative, under section 3—110 of the Code (810 ILCS 5/3—110(d) (West 1994)). We disagree.

■ Section 3—110(d) of the Code governs how to identify the person to whom an instrument is payable and provides for multiple payees as follows:

"(d) If an instrument is payable to 2 or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. *If an instrument payable to 2 of more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.*" (Emphasis added.) 810 ILCS 5/3—110(d) (West 1994).

This multiple payee provision became effective in 1992 and replaced former section 3—116 of the Code. 810 ILCS Ann. 5/3—110, Uniform Commercial Code Comment, at 53 (Smith-Hurd 1993). Under former section 3—116 of the Code, an instrument was presumed to be payable jointly where the instrument did not designate payment in the alternative. 810 ILCS 5/3—116 (West 1992). Contrary to the former provision, the current section shifts the presumption to pay on an instrument in the alternative rather than jointly.

■ We find, as a matter of law, that the designation of two payees on a cashier's check is ambiguous where no directives are stated on the check to determine the manner of payment. In the present case, the cashier's check at issue names two payees but does not include any directions regarding whether the check is payable to the named persons alternatively or jointly. The subject cashier's check does not contain any language or markings to instruct the method of payment, such as the word "and" or the word "or." Accordingly, section 3—110 provides that the check is payable to the persons alternatively. Therefore, in the present case, one named payee was sufficient to negotiate the cashier's check at Maywood Proviso State Bank.

We further note that the special indorsement of Klaus Wieske does not change the validity or result of the negotiation of the subject cashier's check. The Code expressly accommodates special indorsements and applies the principles stated in section 3—110 to special indorsements. 810 ILCS 5/3—205 (West 1994).

Third, we consider whether plaintiffs stated a negligence claim against the institutions that paid the cashier's checks, relying on section 3—404(d) of the Code (810 ILCS 5/3—404(d) (West 1994)).

Where, as here, the trial court dismisses a complaint under section 2—615, this court applies a *de novo* standard of review. *Brown Leasing, Inc. v. Stone*, 284 Ill. App. 3d 1035, 1044 (1996). The question presented by a section 2—615 motion to dismiss for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, would entitle the plaintiff to relief. *Wright v. City of Danville*, 174 Ill. 2d 391, 398 (1996). A section 2—615 motion to dismiss "tests the legal sufficiency of a pleading and a court must accept all well-pleaded facts as true." *Doe v. Calumet City*, 161 Ill. 2d 374, 381 (1994). Where "it clearly appears that no set of facts can be proved" that would entitle the plaintiffs to recover, the trial court's dismissal order will be affirmed. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 11 (1991).

Section 3—404(d) of the Code provides as follows:

"(d) With respect to an instrument to which subsection (a) or (b) [fictitious payee rule] applies, if a person paying the instrument or

taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." 810 ILCS 5/3—404(d) (West 1994).

■ Under the language of section 3—404(d) and the facts of the present case, we find that plaintiffs did not and, indeed, cannot demonstrate in their complaint any failure to exercise ordinary care on the part of the three institutions that accepted the cashier's checks. Plaintiffs, at oral arguments, suggested that banks should have a duty to question customers about the payees in transactions involving cashier's checks, but conceded that, even if such inquiries had been made in the present case, the outcome would not be affected. We believe that such a duty is not required under the Code and that imposing such a duty contravenes the very purpose of a cashier's check, which is meant to operate as cash. Furthermore, such a duty would infringe on the rights of a customer to access his or her own funds for the purpose of distributing them to his or her own designated payees.

The unfortunate facts of this case indisputably include a scam initiated by an attorney against his clients, a fictitious payee, forged check transactions, and the loss of hundreds of thousands of dollars. Although the fact that plaintiffs were duped by a scam is regrettable, their attempt to place blame on the institutions that actually followed and honored their orders is not supportable either under the Code or in common sense. In fact, the opening comments addressing the revised article 3 of the Code specifically state what benefits were expected to obtain from the 1992 revisions. One such stated benefit is the expectation that the new sections 3—404, the fictitious payee provision, through 3—406 "should significantly reduce litigation." Another expected benefit directly addressed cashier's checks and the importance of honoring them as cash equivalents: "Section 3—411 and related provisions considerably improve the acceptability of bank obligations like cashier's checks as cash equivalents by providing disincentives to wrongful dishonor, such as the possible recovery of consequential damages." 810 ILCS Ann. 5/3—101 *et seq.*, Uniform Commercial Code Comment, at 8 (Smith-Hurd 1993).

For all of the foregoing reasons, we affirm both orders by the trial court.

Affirmed.

HOURIHANE, P.J., and HARTMAN, J., concur.