CHARLES HARDER *et al.*, Plaintiffs-Appellants, v. FIRST CAPITAL BANK, Defendant-Appellee (Emergency Damage Control of Central Illinois *et al.*, Defendants).

Fourth District    No. 4—00—1005

Opinion filed July 29, 2002.

Robert P. Follmer, of Fellheimer Law Firm, of Pontiac, for appellants.

Joseph B. VanFleet, of Law Office of Joseph B. VanFleet, L.L.C., of Peoria, for appellee.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Plaintiffs, Charles Harder and Marsha Harder, filed a complaint against defendant First Capital Bank (Bank) seeking relief for its negligent payment of two checks that did not contain the indorsement of all parties listed as payees. The McLean County trial court dismissed their complaint with prejudice pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1998)). Plaintiffs' motion for reconsideration was denied, and this appeal followed. Defendants Emergency Damage Control of Central Illinois (EDC) and James Hughbanks (Hughbanks) are not part of this appeal.

## I. BACKGROUND

Following fire damage to plaintiffs' home in 1998, plaintiffs contracted with EDC, owned by Hughbanks, for home repairs, restoration services, and storage services designed to rid their furniture and personal property of smoke damage and smell. As of the filing of the complaint in November 1999, EDC had failed to complete the repairs and cleaning services, and EDC had failed to return items taken for the purpose of cleaning.

In April 1999, without plaintiffs' knowledge or consent, Hughbanks, acting on behalf of EDC, obtained possession of two checks from plaintiffs' insurer, St. Paul Insurance. The checks were dated April 6, 1999, and were for the sums of $30,476 and $8,862. The $30,476 check was made payable as follows:

EMERGENCY DAMAGE CONTROL    CHARLES AND MARSHA HARDER
BANK OF PONTIAC

The $8,862 check was made payable as follows:

EMERGENCY DAMAGE CONTROL    CHARLES AND MARSHA HARDER

Plaintiffs neither indorsed these checks nor authorized anyone to indorse them on their behalf.

On or about April 13, 1999, Hughbanks presented the checks for payment to defendant bank, where Hughbanks maintained an account. The checks were indorsed by Hughbanks alone, and defendant credited the sums to EDC's account. EDC then failed to complete the work it was contracted to perform and refused to return unearned portions of the insurance funds.

Plaintiffs' complaint alleged in count I conversion and negligence by defendant because the checks were made payable in the conjunctive and not the disjunctive and, therefore, required the signatures of all parties listed as payees. Count II stated a cause of action against EDC;

and count III was directed against EDC and Hughbanks. Defendant filed an answer and affirmative defenses, which are not included in the record. However, based upon plaintiffs' motion to strike and response to affirmative defenses, its appears defendant argued the checks were ambiguous and the bank owed no duty to plaintiffs. The trial court allowed defendant's first affirmative defense asserting ambiguity of the checks, but the second affirmative defense regarding duty was stricken.

Defendant filed a motion to dismiss pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 1998)), which the trial court granted in July 1999. Plaintiffs filed a motion to reconsider, which was denied, and this appeal, directed only to count I, followed pursuant to a Rule 304(a) finding (155 Ill. 2d R. 304(a)) by the trial court.

## II. ANALYSIS

Plaintiffs asserted claims of conversion and negligence against defendant for its payment of two checks, which plaintiffs argue were to be paid jointly with indorsements required from all listed payees. We affirm the trial court.

### A. Standard of Review

■ The standard of review for rulings on motions to dismiss for failure to state a cause of action and for involuntary dismissal is *de novo*. *Bodine Electric of Champaign v. City of Champaign*, 305 Ill. App. 3d 431, 440, 711 N.E.2d 471, 477-78 (1999). A dismissal pursuant to section 2—619 is proper where the claim asserted against a defendant "is barred by other affirmative matter[s] avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1998). In conducting the *de novo* review, the appellate court will examine the complaint and all evidentiary material before the trial court at the time of entry of the order, construing the evidence and drawing all reasonable inferences in the light most favorable to the plaintiff. *Vala v. Pacific Insurance Co.*, 296 Ill. App. 3d 968, 970-71, 695 N.E.2d 581, 582-83 (1998).

### B. Ambiguity of Checks

Plaintiffs argued that the intent of the person signing the check determines to whom a check is payable. Moreover, plaintiffs argued where the intent of the signer must be discerned, additional information either actually known or apparent from the instrument is relevant to a determination of the person or persons to whom an instrument is payable. Plaintiffs asserted that the face of the checks gave additional evidence regarding the purpose for which the checks were written. For example, the checks were drawn on the account of an insurance

company, and one of the checks listed Bank of Pontiac as an additional payee. Therefore, plaintiffs argued these suspicious facts put defendant on notice that the checks in question listed multiple payees for a reason, which thereby created a duty of inquiry by defendant.

■ Section 3—110(a) of the Uniform Commercial Code (UCC) provides that "[t]he person to whom an instrument is initially payable is determined by the intent of the person *** signing as *** the issuer of the instrument." 810 ILCS 5/3—110(a) (West 1998). The UCC comment to section 3—110(a) states this issue usually arises in a dispute over the validity of an indorsement of a payee. The UCC comment further provides an example where a check is made payable to the common name of "John Smith." The comments state that, without section 3—110(a), it would not be possible by name alone to identify which "John Smith" was payable, and further identification or the intention of the drawer would need to be determined. Pursuant to section 3—110(a), however, the name alone is sufficient as the intention of the drawer controls. See 810 ILCS Ann. 5/3—110, Comment 1 (Smith-Hurd 1998).

In the instant case, there is no issue whether the indorsing party was an intended payee or whether the EDC that indorsed the check was the EDC identified as a payee. Further, although plaintiffs argue that this provision should apply to the determination of whether a check is payable jointly or in the alternative, their argument is unsupported by the language of the statute or committee comments. Plaintiffs offer no case law in support of their argument.

Plaintiffs further argue that these checks could not be considered ambiguous as a matter of law. Plaintiffs assert that the checks at issue in the instant case clearly contained the word "and" ("Charles and Marsha Harder") as directive language, and the context of the transaction indicating plaintiffs were joint payees with EDC was evident on the face of the checks. Therefore, plaintiffs argue, the checks clearly required the signature of both plaintiffs in addition to EDC. Moreover, plaintiffs argue it was not reasonable to accept defendant's interpretation of the checks because the consequence would be that EDC could cash the checks without the indorsement of either plaintiff, but neither plaintiff could cash the checks without the indorsement of the other.

■ As set forth above, section 3—110(d) of the UCC provides that if a check payable to two or more persons is ambiguous as to whether it is payable jointly or alternatively, then it is payable alternatively. 810 ILCS 5/3—110(d) (West 1998). The UCC comment offers the example of ambiguity as an instrument payable to "X and/or Y," which, in accordance with section 3—110(d), is payable in the alternative. The UCC comment further explains that in dealing with ambiguities,

the "persons dealing with the instrument should be able to rely on the indorsement of a single payee." 810 ILCS Ann. 5/3—110, Comment 4 (Smith-Hurd 1998).

In addition to the UCC comment, Illinois case law has addressed the issue of ambiguity under facts similar to the instant case in *Meng v. Maywood Proviso State Bank*, 301 Ill. App. 3d 128, 702 N.E.2d 258 (1998). In *Meng*, the plaintiffs purchased three cashier's checks from the defendant bank, which were made payable to multiple parties. The payees were listed on the checks with no grammatical indicators; each payee's name was listed on a separate line. The plaintiffs filed a complaint asserting, in part, that the checks with multiple payees and no directives were unambiguous and, therefore, required the indorsement of all payees. After considering the language in section 3—110(d) of the UCC, the court held that "as a matter of law, \*\*\* the designation of two payees on a cashier's check is ambiguous where no directives are stated on the check to determine the manner of payment." *Meng*, 301 Ill. App. 3d at 136, 702 N.E.2d at 264; see also *Dimmitt & Owens Financial, Inc. v. USA Glass & Metal, Inc.*, No. 97 C 7821, slip op. at 2-3 (N.D. Ill. 1998).

■ We recognize that the checks in *Meng* were cashier's checks, which are meant to operate as cash; however, we find the ruling as to ambiguity applicable in the instant case. Regardless of the type of instrument used to make payment, a holder in due course is entitled to negotiate and enforce an instrument. See 810 ILCS 5/3—201, 3—301 (West 1998). This requires banks to determine if a party to any instrument is a holder in due course and further requires consideration of whether the instrument is payable jointly or in the alternative. Therefore, the considerations in *Meng* regarding whether an ambiguity exists in an instrument with no grammatical directives are appropriately applicable to the instant case irrespective of the fact that two different instruments are at issue. *Meng* noted that the multiple payee provision, section 3—110, became effective in 1992, replacing another section, and that the current section *shifts the presumption to pay on an instrument* to in the alternative rather than jointly. *Meng*, 301 Ill. App. 3d at 136, 702 N.E.2d at 264. Applying *Meng* to the instant facts, we agree with the trial court and find the checks were ambiguous as a matter of law and, therefore, were payable in the alternative with the indorsement of any single payee.

Plaintiffs, however, argue that such a ruling will result in an illogical interpretation of the statute insofar as EDC could solely indorse the check, but *both* plaintiffs would be required to indorse the check to negotiate it. While we do not find any Illinois case law addressing this issue, other jurisdictions have addressed it and determined that

the language "A and B or C" requires the signatures of A and B jointly or C alone to be negotiated. See *Leinert v. Sabine National Bank*, 541 S.W.2d 872 (Tex. Civ. App. 1976); *Internal Revenue Service v. Gaster*, 42 F.3d 787 (3d Cir. 1994). Likewise, we do not find it illogical to require the signatures of two payees who are identified jointly on a check and still only require the signature of one payee listed as an alternative single payee.

We must determine whether these checks—without any grammatical connector between the listed payees—were payable jointly or in the alternative. Having already found the checks in the instant case were ambiguous and payable in the alternative, we have, in essence, inserted "or" where there was no grammatical connector between the payees. Therefore, the two checks made payable to "Charles and Marsha Harder [or] Emergency Damage Control [or] Bank of Pontiac" could be negotiated with the indorsement of EDC or Bank of Pontiac or Charles *and* Marsha Harder. Likewise, the check made payable to "Emergency Damage Control [or] Charles and Marsha Harder" required the indorsement of EDC or Charles *and* Marsha Harder. Such an interpretation is consistent with *Leinert* and *Gaster*, and it is consistent with general rules of construction, as argued by plaintiffs, which require every word to have meaning and allow none to be rendered meaningless. See *Illinois Republican Party v. Illinois State Board of Elections*, 188 Ill. 2d 70, 84, 720 N.E.2d 231, 239 (1999) (Freeman, C.J., dissenting).

## C. Negligence

Plaintiffs also argue that the trial court erred in dismissing the complaint because defendant could be held liable for negligent payment, even if the checks in question were ambiguous. Plaintiffs argue that if defendant's policies and procedures would have allowed the present check to slip through regardless of the language used on the check, then defendant's actions could amount to a breach of duty to plaintiffs, regardless of ambiguity. See *Wilder Binding Co. v. Oak Park Trust & Savings Bank*, 173 Ill. App. 3d 34, 527 N.E.2d 354 (1988), *rev'd*, 135 Ill. 2d 121, 552 N.E.2d 783 (1990); see also *Gillespie v. Riley Management Corp.*, 59 Ill. 2d 211, 319 N.E.2d 753 (1974).

We find *Wilder* and *Gillespie* distinguishable from the instant case. In *Wilder*, the plaintiff's bookkeeper had forged checks on the company account, and the defendant bank had cashed them using an automatic check-sorting device. All of the checks were for amounts less than $1,000, and the automatic check-sorting machine separated all checks less than $1,000 and paid them automatically. This device was widely used to process large daily volumes of checks. *Wilder*, 173 Ill. App. 3d at 37, 527 N.E.2d at 355-56.

During the trial, an official from the defendant bank admitted that no checks under $1,000 were reviewed by sight or any other method that would reveal the possibility of an unauthorized or forged signature. In finding the defendant bank negligent, the court stated "[s]ince the bank has an absolute duty not to pay unauthorized drafts, such payment, even in good faith, violates the duty to pay only those items which are 'properly payable.' " *Wilder*, 173 Ill. App. 3d at 41, 527 N.E.2d at 358. The court further found that the use of the automatic check-sorting machine completely ignored the customer's signature as a criterion for accepting drafts, which, as a matter of law, was a lack of ordinary care. *Wilder*, 173 Ill. App. 3d at 40-41, 527 N.E.2d at 358.

In *Gillespie*, the plaintiff paid Riley $25,000 as earnest money for the construction of an apartment building. The earnest money was to be placed in an escrow account requiring the plaintiff's signature for withdrawal, but Riley's president purchased a cashier's check payable to Riley and the plaintiff instead. Riley's president explained that he took this action to avoid the charges of maintaining an escrow account and assured the plaintiff that both payees' signatures were required to negotiate the check. Thereafter, Riley's president returned to the defendant bank where he purchased the original cashier's check and requested two new cashier's checks in exchange for the one in his possession. The defendant bank exchanged the one cashier's check jointly payable to plaintiff and Riley for two cashier's checks payable to Riley alone. *Gillespie*, 59 Ill. 2d at 213, 319 N.E.2d at 755.

In finding that the defendant bank had a duty to inquire into the nature of the transaction concerning wrongdoing, delivery, and the lack of plaintiff's indorsement, the court set forth in detail the unusual circumstances that raised a duty of inquiry. Those facts included the following: there was only a $13,000 balance in Riley's account prior to the deposit of the plaintiff's earnest money; the defendant bank would not issue the original cashier's check until the plaintiff's earnest money check had cleared; the $25,000 cashier's check was issued jointly to the plaintiff and Riley; Riley's president returned a month later and requested two new checks payable only to Riley; the plaintiff did not indorse the original cashier's check; and the defendant bank requested Riley's president write "not used for purpose issued" on back of original cashier's check. *Gillespie*, 59 Ill. 2d at 219, 319 N.E.2d at 758. The court further discussed the significance of cashier's checks and how, once delivered, they cannot be revoked or countermanded. *Gillespie*, 59 Ill. 2d at 218-19, 319 N.E.2d at 757. Based upon these facts, the court found there was a duty to inquire, and the defendant bank's failure to inquire resulted in conversion.

■ While we find defendant's payment of the two checks in the instant case created an unfortunate result for plaintiffs, it did not constitute the crime of conversion. This is a factual distinction from both *Wilder* and *Gillespie*, where the honoring of the instruments by the banks did result in a crime; therefore, in those cases, a negligence count was allowed to stand against the banks. In the instant case, however, we have found that the checks were properly paid upon the indorsement of only EDC, and we are unpersuaded that plaintiffs should be allowed to maintain a negligence action in an attempt to have defendant found negligent for its payment of properly indorsed and payable checks. Such a result would be illogical.

## III. CONCLUSION

For the reasons set forth above, we affirm the trial court.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.