**In re AMES DEPARTMENT STORES, INC., et al., Debtors.**

**Metro–Goldwyn–Mayer Home Entertainment, Inc., Plaintiff,**

v.

**Ames Department Stores, Inc., and GMAC Commercial Credit LLC, Defendants.**

**Bankruptcy No. 01–42217 (REG).**
**Adversary No. 02–3085 (REG).**

United States Bankruptcy Court, S.D. New York.

Feb. 18, 2005.

Finkel, Goldstein, Berzow, Rosenbloom & Nash, LLP, By: Neal M. Rosenbloom, Esq. (argued), J. Ted Donovan, Esq., Peter L. Reilly, Esq., New York, NY, Glickfeld, Fields & Jacobson LLP, By: Lawrence M. Jacobson, Esq., Beverly Hills, CA, Counsel for plaintiff Metro–Goldwyn–Mayer Home Entertainment, Inc.

Hahn & Hessen LLP, By: John P. Amato, Esq. (argued), Matthew J. Lasky, Esq., Michael D. Thorp, Esq., New York, NY, Counsel for defendant GMAC Commercial Credit LLC, n/k/a GMAC Commercial Finance LLC.

Weil, Gotshal & Manges LLP, By: Martin J. Bienenstock, Esq., Deryck A. Palmer, Esq., Barry S. Gold, Esq. (argued), Michelle J. Meises, Esq., Timothy Q. Karcher, Esq., Samuel S. Kohn, Esq., New York, NY, Togut, Segal & Segal LLP, By: Gerald DiConza, Esq., New York, NY, Counsel for debtor-defendant Ames Department Stores, Inc.

Otterbourg, Steindler, Houston & Rosen, P.C., By: Rosanne A. Finkel, Esq., New York, NY, Counsel for the Official Creditors Committee.

### DECISION ON MOTIONS TO DISMISS

ROBERT E. GERBER, Bankruptcy Judge.

In this adversary proceeding under the umbrella of the chapter 11 case of Ames Department Stores, Inc. ("Ames"), plaintiff Metro–Goldwyn–Mayer Home Entertainment, Inc. ("MGM") seeks monetary damages against defendants Ames and GMAC Commercial Credit LLC, n/k/a GMAC Commercial Finance LLC ("GMAC"), for conversion, forgery, and negligence, and for the imposition of a constructive trust. Each of Ames and GMAC has moved to dismiss under FRBP 7012(b) and FRCP 12(b)(6) (the "Motions to Dismiss"). It

may well be that under the analysis that follows, once key facts are clarified, it will be very difficult for MGM to prevail. But because the Court cannot consider potentially dispositive facts set forth in materials outside the scope of a 12(b)(6) motion, both Motions to Dismiss are denied.

*Standards for Dismissal*

Under well-settled principles, when considering a motion to dismiss under FRCP 12(b)(6), as made applicable under FRBP 7012(b), a complaint's factual allegations are presumed true, and are construed in favor of the pleader.[1] "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[2] As the Supreme Court held in *Scheuer v. Rhodes:*

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed

it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.[3]

Dismissal should be granted only when the plaintiff's allegations, taken as true, along with any inferences that flow from them, are insufficient as a matter of law.[4]

On a motion to dismiss, courts may consider certain documents in addition to the complaint, including the contents of any documents attached to the complaint or incorporated by reference; matters as to which it can take judicial notice; and documents in the possession of the non-moving party (MGM here) or documents which the non-moving party knew of or relied on in connection with its complaint.[5] However, a court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a motion to dismiss.[6]

*Facts Alleged in MGM's Amended Complaint*

On July 5, 2001, Ames issued a check (the "Check") for approximately $298,000 (the "Check Proceeds").[7] The Check was

---

1. *See, e.g., Luedke v. Delta Air Lines, Inc.,* 159 B.R. 385, 389 (S.D.N.Y.1993) (Patterson, J.) (applying this standard, denying motion to dismiss third-party complaint), *cited in In re Lois/USA, Inc.,* 264 B.R. 69, 89 (Bankr. S.D.N.Y.2001).

2. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 44 (2d Cir.1997) (quoting *Conley*); *In re Granite Partners, L.P.,* 210 B.R. 508, 514 (Bankr.S.D.N.Y.1997) (Bernstein, C.J.) (denying motion to dismiss complaint, noting dismissal would be proper only when the plaintiff would not be entitled to any type of relief, even if it prevailed on the merits of its factual allegations).

3. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

4. *See, e.g., Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749 (1994) (applying the standard discussed above but nevertheless dismissing, where claims for relief were legally insufficient); *In re 80 Nassau Assocs.,* 169 B.R. 832, 841 (Bankr.S.D.N.Y.1994) (Bernstein, C.J.).

5. *See Granite Partners,* 210 B.R. at 514.

6. *See Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000) (citing *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991); *Fonte v. Bd. of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988)).

7. Am. Compl. at ¶¶ 2, 16; Am. Compl. Ex. A. A copy of the Check is attached to and incorporated into MGM's Amended Complaint. *See Granite Partners,* 210 B.R. at 514.

made payable to two payees, stacked one above the other as follows:

BANK OF AMERICA COMMERCIAL

MGM HOME ENTERTAINMENT

2407 COLLECTION CENTER DR

CHICAGO, IL 60693 [8]

It is alleged that Ames issued the Check to pay MGM for debts incurred by Ames in the ordinary course of its commercial operations.[9]

GMAC obtained the Check "in a manner currently unknown to MGM."[10] Then on July 18, 2001, allegedly without the knowledge or consent of MGM, GMAC endorsed the Check and deposited the Check Proceeds into GMAC's bank account by writing on the Check's reverse:

GMAC COMMERCIAL CREDIT LLC

BANK OF AMERICA COMMERCIAL

MGM HOME ENTERTAINMENT [11]

On August 5, 2001, GMAC contacted Ames about the Check.[12] But neither GMAC nor Ames contacted *MGM* regarding the Check at that time.[13] When Ames filed its bankruptcy petition on August 20, 2001, Ames directed GMAC to return the Check Proceeds to Ames, and GMAC did so on August 29, 2001.[14]

MGM has demanded payment of the Check Proceeds, but Ames has refused to comply with MGM's demands.[15]

*MGM's Claims*

MGM's first claim for relief alleges conversion by each of Ames and GMAC.[16] In this claim, MGM alleges that GMAC "wrongfully acquired and/or converted" the Check Proceeds when GMAC allegedly forged MGM's endorsement on the Check and deposited the Check Proceeds into GMAC's account.[17] In addition, MGM alleges that Ames "wrongfully acquired and/or converted" the Check Proceeds when Ames directed GMAC to deliver the Check Proceeds to Ames—thus violating an alleged fiduciary duty that Ames, as debtor-in-possession, owed to MGM.[18]

MGM's second claim for relief alleges forgery by GMAC, citing GMAC's alleged wrongful endorsement of MGM's name on the Check's reverse without MGM's authorization or knowledge.[19] MGM's third claim for relief is a negligence claim against GMAC for allegedly failing to exercise an appropriate standard of care in the transaction.[20] And in its fourth claim for relief, MGM seeks to impose a constructive trust upon the Check Proceeds, to effectively remove the Proceeds from Ames's bankruptcy estate.[21]

---

8. *Id.*

9. Am. Compl. at ¶ 2. The Amended Complaint states that the Check was issued "in payment of recent debts of *GMACCC* to MGM, in the ordinary course of AMES' business and the dealings between MGM and AMES." *Id.* (emphasis added). The Court views the inclusion of GMACCC here as a typographical error. The Court considers MGM to have intended the sentence to read "debts of Ames to MGM" instead.

10. *Id.* at ¶ 2.

11. *Id.* at ¶¶ 2, 17–19; Am. Compl. Ex. A.

12. *Id.* at ¶¶ 3, 20.

13. *Id.* at ¶¶ 3, 23.

14. *Id.* at ¶¶ 4, 5, 21–22.

15. *Id.* at ¶ 26.

16. *Id.* at ¶¶ 27–28.

17. *Id.* at ¶ 28.

18. *Id.*

19. *Id.* at ¶¶ 33–36.

20. *Id.* at ¶ 40.

21. *Id.* at ¶¶ 42–46. *See also* MGM's Memorandum of Law in Opposition of Motion of

*Choice of Law*

■ As the claims here arise under state law, the Court begins its analysis with the choice-of-law rules of New York, the forum state in which it sits.[22]

■ In contract cases, New York courts apply a "center of gravity" or "grouping of contacts" approach.[23] Under this approach, courts consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties.[24] In contract cases, New York courts may also consider public policy "where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests."[25]

■ In tort actions in New York, the relevant analytical approach is the "interest analysis," which applies the law of the jurisdiction having the greatest interest in the litigation.[26]

■ Any contract analysis plainly must look to the law of Illinois. The Check, which shows an Illinois address beneath the names of MGM and Bank of America Commercial, was directed to, and was presumably received in, Illinois.[27] If there was any wrongful conduct in connection with the negotiation of the Check or GMAC's performance, it took place in Illinois, and the subject matter of the controversy was, for much of the time, in Illinois.

Tort analysis does not produce as clear a result. MGM maintains a place of business in California, and it may have suffered its injury there, though MGM could have suffered its injury elsewhere as well.[28]

■ Nevertheless, the parties seemingly agree that Illinois law applies to the instant matter. MGM repeatedly stated in oral argument on these motions that Illinois law applies, and Ames and GMAC did not dispute this.[29] In New York, choice-of-

Defendant Ames Department Stores, Inc. Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure for an Order Dismissing Adversary Proceeding, at 17 (Apr. 2, 2003).

22. *See In re Ticketplanet.com*, 313 B.R. 46, 62 (Bankr.S.D.N.Y.2004); *In re Lois/USA, Inc.*, 264 B.R. 69, 90 (Bankr.S.D.N.Y.2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

23. *See In re Payroll Express Corp.*, 216 B.R. 344, 353 (S.D.N.Y.1997).

24. *Id.*

25. *Id.* at 353–54 (citing *Lazard Freres & Co. v. Protective Life Insur. Co.*, 108 F.3d 1531, 1539 (2d Cir.1997) (quoting *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030–31 (2d Cir.1996))).

26. *Lazard Freres*, 108 F.3d at 1539 n. 5. *See also Robins v. Max Mara, U.S.A., Inc.*, 923 F.Supp. 460, 465 (S.D.N.Y.1996) ("New York

has different choice of law tests for tort and contract claims.").

27. Am. Compl. Ex. A.

28. Am. Compl. at ¶ 13.

29. Transcript of oral arguments in this Court on this action (May 13, 2003):

Mr. Rosenbloom for MGM at 35: "We believe that Illinois law applies, judge. We believe all the contacts are in Illinois, our brief which is submitted in connection with the opposition to the GMAC motion to dismiss lays out that Illinois law should apply. No one has contested that Illinois law should apply." (apparent transcription error corrected)

. . .

Mr. Gold for Ames at 53–54: "I believe [Illinois and New York law] are reasonably the same, which is the primary reason why we didn't spend a lot of time trying to parse out which law did apply.... I think it is fairly identical between Illinois and New York."

law assents expressed during oral arguments can be determinative, even on a motion to dismiss.[30] Based on the foregoing, the Court applies Illinois law.

> . . .
> Mr. Amato for GMAC at 67: "That is the law in New York. That is the law in Illinois. There is no difference."
> . . .
> Mr. Rosenbloom for MGM at 79–80: "Illinois law is far different than New York law. . . . Judge, we have contended that Illinois law applies here, and Illinois affords us relief. New York has absolutely nothing to do with this transaction other than the fact that Your Honor is sitting here in New York. Zero."

See also MGM's Memorandum of Law in Opposition of Motion of Defendant GMAC Commercial Credit LLC Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure for an Order Dismissing the Adversary Proceeding, at 18 (Apr. 2, 2003) ("Illinois law applies to this controversy, because the facts giving rise to MGM's claim took place there. The Check was directed to a lockbox in Chicago, and upon information and belief, GMACCC forged MGM's endorsement on the Check and deposited the Check Proceeds to its own account in Illinois."); MGM's Memorandum of Law in Opposition of Motion of Defendant Ames Department Stores, Inc. Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure for an Order Dismissing Adversary Proceeding, at 13 (Apr. 2, 2003) ("Illinois law applies here, because the facts giving rise to MGM's claims (e.g. forgery of MGM's endorsement, deposit of the Check Proceeds and payment of those proceeds in response to AMES' postpetition demand) occurred in that state.").

30. *Schultz v. North Am. Ins. Group*, 34 F.Supp.2d 866, 868 n. 4 (W.D.N.Y.1999). *See also Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (holding that the implied consent to New York law manifest in the parties' briefs was sufficient to establish choice of law) (interpreting New York law); *Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir.1991) ("[E]ven when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law.") (interpreting New York

## Stacked Payees in Illinois

In states that have adopted the 1990 version of the UCC, such as Illinois,[31] payees with a facially ambiguous relationship are deemed to be paid in the alternative, not jointly.[32] In other words, if a

law); *Tamman v. Schinazi*, 2004 WL 1637000, at *3, 2004 U.S. Dist. LEXIS 13896, at *9 n. 2 (S.D.N.Y. July 21, 2004) ("[I]mplied consent . . . is sufficient to establish choice of law."); *Bombardier Capital, Inc. v. Richfield Housing Center, Inc.*, 1994 WL 118294, at *3, 1994 U.S. Dist. LEXIS 3432, at *8–9 (N.D.N.Y. Mar. 21, 1994).

31. *Dimmitt & Owens Fin., Inc. v. USA Glass & Metal, Inc.*, 1998 WL 852862, at *2–4, 1998 U.S. Dist. LEXIS 19258, at *9 (N.D.Ill.Dec. 4, 1998) (noting that revised Article 3 became effective in Illinois on January 1, 1992).

32. 810 ILL. COMP. STAT. 5/3–110 (2004) ("If an instrument payable to 2 or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively."); *Harder v. First Capital Bank*, 332 Ill.App.3d 740, 266 Ill.Dec. 770, 775 N.E.2d 610, 613–14 (2002) (dismissing conversion and negligence claims because checks listing multiple payees without grammatical connectors except between names of two payees were ambiguous as to whether checks were payable jointly or in the alternative and thus were payable in the alternative); *Meng v. Maywood Proviso State Bank*, 301 Ill.App.3d 128, 234 Ill.Dec. 92, 702 N.E.2d 258, 264 (1998) (cashier's check which did not include any language or markings, such as the word "and" or the word "or," regarding whether the check was payable alternatively or jointly was ambiguous, thus payable alternatively); *Dimmitt*, 1998 WL 852862, at *3–4, 1998 U.S. Dist. LEXIS 19258, at *9–11 (check without any indication as to whether it was intended to be payable alternatively or jointly was ambiguous as to whether it was made payable to either payee alternatively and could be paid to either payee individually); *Manufacturers' News, Inc. v. Indus. Guides, Inc.*, 1997 WL 567802, at *3, 1997 U.S. Dist. LEXIS 13608, at *8–9 (N.D.Ill. Sept. 2, 1997) (dismissing conversion claims because the UCC required the ambiguous check to be construed as payable to the persons alternatively).

check is addressed to two or more payees without any grammatical connectors between the payees, such as "and" or "or," the UCC essentially inserts the word "or" between the names of the payees.[33] This holds for "stacked payees" such as MGM and Bank of America Commercial.[34] In fact, stacked payees are paid in the alternative even if one payee has a factoring relationship with the other payee, as may or may not be the case with MGM and Bank of America Commercial.[35]

 So in Illinois, because stacked payees are paid in the alternative, one of the stacked payees can endorse and negotiate a check without the other payee's consent or even knowledge.[36] Moreover, a single payee can sign both its name and the name of the alternative payee without any liability for forgery.[37] In effect, if one

signature satisfies a check's endorsement, any additional superfluous signatures are ignored.[38]

Therefore, if GMAC was authorized to endorse checks payable to Bank of America Commercial, as Bank of America Commercial's successor in interest or otherwise, MGM's conversion and forgery claims could not survive. Similarly, if GMAC could endorse checks payable to Bank of America Commercial, MGM's negligence claim against GMAC could not survive either—because GMAC could not be found negligent for doing that which is proper under the law.[39] And if MGM's conversion, forgery, and negligence claims were dismissed, MGM's request for the imposition of a constructive trust would also fail.[40]

**33.** *Harder v. First Capital Bank*, 332 Ill.App.3d 740, 266 Ill.Dec. 770, 775 N.E.2d 610, 614 (2002).

**34.** *See Pelican Nat'l Bank v. Provident Bank of Md.*, 381 Md. 327, 849 A.2d 475 (2004) (providing recent and extensive analysis of the stacked payee format; examining the 1990 version of the UCC and Illinois cases specifically; determining that stacked payees are paid in the alternative); *Allied Capital Partners, L.P. v. Bank One, Texas, N.A.*, 68 S.W.3d 51, 54–55 (Tex.App.2001) (holding that payees stacked without punctuation marks or connecting terms are paid in the alternative). Because the UCC is a uniform law, the court can and does consider decisions from states other than Illinois that have the same statutory provisions.

**35.** *See Hyatt Corp. v. Palm Beach Nat'l Bank*, 840 So.2d 300 (Fla.Dist.Ct.App.2003) (with citations to Illinois cases); *Allied Capital*, 68 S.W.3d at 54–55. MGM's Amended Complaint alleges nothing about the relationship between MGM and Bank of America Commercial. However, see the Court's discussion in "GMAC's Authority–Assertions Outside the Scope of the Motions to Dismiss" below.

**36.** *See supra*, notes 32–35.

**37.** *See Coregis Insur. Co. v. Fleet Nat'l Bank*, 68 Conn.App. 716, 793 A.2d 254, 259 (2002)

(an anomalous or forged endorsement "does not deprive a payor bank of authority to pay the instrument if it is properly endorsed by a holder."); *Danco, Inc. v. Commerce Bank/Shore*, 290 N.J.Super. 211, 675 A.2d 663, 667–68 (1996) ("[T]he checks were properly payable with only one valid indorsement notwithstanding that the other was unauthorized."); *Kinzig v. First Fidelity Bank*, 277 N.J.Super. 255, 649 A.2d 634, 637 (1994); *L.B. Smith, Inc. v. Bankers Trust Co.*, 80 A.D.2d 496, 496–99, 439 N.Y.S.2d 543 (N.Y.App.Div.1981).

**38.** *See id.*

**39.** *See Harder v. First Capital Bank*, 332 Ill. App.3d 740, 266 Ill.Dec. 770, 775 N.E.2d 610, 616 (2002) ("[W]e are unpersuaded that plaintiffs should be allowed to maintain a negligence action in an attempt to have defendant found negligent for its payment of properly indorsed and payable checks. Such a result would be illogical.");

**40.** *See Comcast of Ill. X, LLC v. Hightech Elecs., Inc.*, 2004 WL 1718522, at *8, 2004 U.S. Dist. LEXIS 14619, at *23 (N.D.Ill. July 29, 2004) ("[A]n imposition of a constructive trust cannot stand as a separate claim."); *In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 629 (Bankr.S.D.N.Y.2002), *aff'd* 2004 WL

*GMAC's Authority—Assertions Outside the Scope of the Motions to Dismiss*

According to MGM's Amended Complaint, GMAC obtained the Check "in a manner currently unknown to MGM."[41] But subsequent to the filing of the Amended Complaint, MGM stated in a letter to the Court that GMAC "was the successor in interest to much of Bank of America Commercial's business, having purchased that business, including 'providing accounts receivable . . . collection,' in approximately November 2000," just seven months before the Check was issued.[42] Similarly, in its Memorandum in Support of its Motion to Dismiss, GMAC stated:

In late 2000, GMACCC acquired substantially all of the assets included in the factoring business previously conducted by Banc [sic] of America Commercial Corporation. . . . Pursuant to that acquisition, GMACCC's clerks routinely received payments that named "Banc [sic] of America Corporation" as a payee. GMACCC had every right to cash such checks in GMACCC's name when the checks were the proceeds of GMACCC's collateral. In this instance, GMACCC learned from Ames that the Check was issued in error and GMACCC therefore returned the proceeds to Ames.[43]

Ames added: "GMACCC understandably assumed the Check was a payment to BOAC as factor and therefore believed it had the right to indorse the Check as BOAC's successor."[44]

But in a letter to the Court dated January 27, 2005, MGM stated:

After examining the Asset Purchase and Sale Agreement and Bill of Sale between Bank of America and GMAC Commercial Credit LLC ("GMAC"), we have determined that MGM's lockbox account with Bank of America was not purchased by or assigned to GMAC. Thus, it is apparent that GMAC is not Bank of America's successor with respect to any agreement or relationship that relates to the subject bank, including MGM's lockbox agreement with Bank of America.[45]

*Final Analysis*

▆ As a result of MGM's most recent letter to the Court, it is plain that, at least on this state of the record, GMAC's status as a successor to Bank of America Commercial (or GMAC's authority to endorse checks payable to Bank of America Commercial) is not clear, and is not a basis for dismissal under Rule 12(b)(6). While courts can sometimes take judicial notice of matters relevant to a motion under Rule

1948754, 2004 U.S. Dist. LEXIS 17575 (S.D.N.Y. Sept. 1, 2004) (dismissing a claim for conversion and denying the imposition of a constructive trust). *See also In re First Central Fin. Corp.*, 377 F.3d 209, 217–18 (2d Cir.2004) ("In light of the fact that [the goals of the Bankruptcy Code] can be compromised by the imposition of a constructive trust, 'bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so.' " (quoting *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir.1994))).

**41.** Am. Compl. at ¶ 2.

**42.** Letter to the Court from Neal M. Rosenbloom, Esq., counsel for MGM (Apr. 14, 2004).

**43.** GMAC's Memorandum in Support of Motion for an Order Dismissing the Amended Complaint in this Adversary Proceeding Against Defendant GMAC Commercial Credit LLC, at 6 n.3 (Jan. 31, 2003).

**44.** Ames's Reply Memorandum of Law in Further Support of Motion of Ames Department Stores, Inc. for Order Dismissing Amended Complaint Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, at 6 n. 3 (May 8, 2003).

**45.** Letter to the Court from Neal M. Rosenbloom, Esq., counsel for MGM (Jan. 27, 2005).

12(b)(6), the Court does not believe that to be appropriate here. At this point, the facts to be judicially noticed are seemingly disputed, and are hardly clear.

Similarly, the Court declines to convert the Motions to Dismiss to motions for summary judgment without providing the parties with an opportunity for additional discovery.[46] If GMAC really was the successor in interest to Bank of America Commercial, or was authorized to endorse checks made payable to Bank of America Commercial, Ames and GMAC may well prevail, but the Court cannot make such a finding now. Efforts by GMAC to establish its status or authority would more appropriately be considered on a motion for summary judgment, at which time GMAC and Ames could make the necessary record with their own evidentiary materials, and MGM could oppose.

For now, the Court must confine its inquiry to the allegations—and the inferences that flow from the allegations—of the Amended Complaint, interpreting these allegations and inferences in a light most favorable to MGM.[47] With potentially critical facts not appearing in the Amended Complaint, the Court is not in a position to make assumptions as to what those facts will be. Accordingly, both Motions to Dismiss are denied.

---

**46.** According to the Second Circuit:

"When matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." This conversion requirement is strictly enforced whenever there is a "legitimate possibility" that the district court re-

lied on material outside the complaint in ruling on the motion. Thus, a district court errs when it "considers affidavits and exhibits submitted by" defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss.
*Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir.2000) (internal citations omitted).

**47.** *See supra*, notes 1–4 and accompanying text.