849 A.2d 475

**PELICAN NATIONAL BANK**

v.

**PROVIDENT BANK OF MARYLAND.**

**No. 48, Sept. Term, 2002.**

Court of Appeals of Maryland.

May 14, 2004.

C. Kevin Kobbe (Richard M. Kremen, Jodie E. Bekman, Piper, Rudnick, LLP, on brief), Baltimore, for petitioner.

James T. Heidelbach (Gebhardt & Smith, LLP, on brief), Baltimore, for respondent.

Marjorie A. Corwin, Brian L. Moffet, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, amicus curiae in support of appellee.

Argued before BELL, C.J., ELDRIDGE *, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

BELL, C.J.

The issue in this case is whether a check made payable to multiple payees, listed in stacked formation on its face, without any grammatical connector or punctuation, is ambiguous as to whether it is negotiable only jointly, thus, requiring the indorsement of all of the named payees, or alternatively, requiring the indorsement of any one of the named payees. The Circuit Court for Baltimore City held that a check so drawn is ambiguous and, accordingly, entered summary judgment in favor of Provident Bank of Maryland, the appellee,

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

and against Pelican National Bank, the appellant. We shall affirm the judgment of the Circuit Court.

## I.

Harford Mutual Insurance Company issued a check, drawn on Allfirst Bank, in the amount of $60,150.00, to payees as follows:

"Andrew Michael Bogdan, Jr., Crystal Bogdan

Oceanmark Bank FSB

Goodman–Gable–Gould Company".

The check was in payment of a casualty claim made by Bogdan on an insurance policy, issued by Harford Mutual, on commercial property owned by Bogdan and his wife and on which Oceanmark, the appellant's predecessor in interest,[1] held a mortgage. Thus, the payees of the check were the property owners, the mortgage holder and the insurance agent who adjusted the casualty claim. In addition to the payees, the face of the check listed, in small print, the insurance policy number, claim identification number and the "loss date" and a small notation that read "MEMO Fire—building."

The check, indorsed only by the Bogdans and the insurance adjuster, was presented to the appellee, which cashed it. Michael Bogdan deposited the proceeds in a commercial account he held at the appellee bank. When the appellant filed its Complaint for Money Judgment, Bogdan had not distributed any of the proceeds of the check to the appellant.

Having failed in its attempt to obtain reimbursement from the appellee for negotiating the check without Oceanmark's endorsement, the appellant filed against the appellee, in the Circuit Court for Baltimore City, a Complaint for Money

---

1. The appellant avers that the Bogdan property was financed initially by First National Funding Corporation. That company sold the note and deed of trust pertaining to the property to Oceanmark, who, in turn, sold them to Pelican National Bank, the appellant. It is for this reason that the appellant asserts that it is assignee of the note and deed of trust and, thus, Oceanmark's successor in interest.

Judgment. Alleging conversion,[2] it argued that the subject check was negotiable only if each of the listed payees indorsed it and, since the check was not indorsed by Oceanmark, the appellee improperly negotiated the check. After it filed its answer to the complaint,[3] arguing as an affirmative defense, that the check was payable in the alternative pursuant to Maryland Code, (1975, 2002 Replacement Volume) § 3–110(b) of the Commercial Law Article,[4] the appellee moved for summary judgment on that basis. The appellant responded with its Cross–Motion for Summary Judgment.[5]

---

2. Under Maryland Code (1975, 2002 Replacement Volume) § 3–420 of the Commercial Law Article:

> "An instrument is . . . converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee."

3. The appellee also filed a Third–Party Complaint against the other payees named on the check, Andrew Michael Bogdan, Jr., Crystal Bogdan, and Goodman–Gable–Gould Company, seeking indemnification. Goodman filed a Motion to Dismiss the Third–Party Complaint against it, which the court granted.

4. More specifically, the appellee asserted:

> "Pelican's claims against Provident are barred because, under Section 3–110(d) of the Commercial Law Article of the *Maryland Annotated Code*, the check was payable to the payees in the alternative and Oceanmark's endorsement was not required to negotiate the check."

Section 3–110(d) is a part of Maryland's Uniform Commercial Code. The Uniform Commercial Code is a set of uniform laws, initially promulgated by the National Conference of Commissioners on Uniform State Laws (N.C.C.U.S.L.) and the American Law Institute, to ensure uniformity among the states and territories regarding commercial practices. The first version of the Uniform Commercial Code was promulgated in the early 1960's. It was extensively revised in 1990 by the N.C.C.U.S.L. Maryland, in 1996, like a number of other states, adopted the revisions, including the revision to § 3–116, the predecessor of the current provision, § 3–110.

5. In support, the appellant relied on *Peoples National Bank v. American Fid. Fire Ins. Co.*, 39 Md.App. 614, 618, 386 A.2d 1254, 1257 (1978), which, interpreting Maryland U.C.C. § 3–116, the precursor to § 3–110, held that a check payable to two or more persons without indication

The Circuit Court granted the appellee's motion for summary judgment. Interpreting § 3–110(b) as resolving any ambiguity with respect to whether a check payable to two or more persons is payable jointly or in the alternative in favor of the latter, *i.e.*, that such checks are payable in the alternative, and noting the parties' arguments acknowledging that the issue was whether the check was ambiguous, the court held:

"[o]n its face, the check is payable to two or more persons and has no intervening connectors, marks or punctuation, such as 'and', 'or,' or 'and/or'. Therefore, this court finds as a matter of law that the check is ambiguous as to whether or not it is payable to the persons jointly or alternatively."

It relied on *City First Mortgage Corp. v. Florida Residential Property & Casualty*, 37 U.C.C. Rep. Serv.2d 126 (Miami–Dade County Ct.1998) [6] and *Bijlani v. Nationsbank of Florida, N.A.*, 25 U.C.C. Rep. Serv.2d 1165 (Fla.Cir.Ct.1995),[7] but neither addressed, nor cited, *Peoples National Bank v. Amer-*

that it is payable in the alternative is payable only jointly, *i.e.*, requires the indorsement of all of the named payees. The petitioner also relied upon *Bank of America National Trust and Savings Assoc. v. Allstate Insurance Co.*, 29 F.Supp.2d 1129 (C.D.Cal.1998).

**6.** The payee designation in *City First Mortgage Corp. v. Florida Residential Property & Casualty*, 37 U.C.C. Rep. Serv.2d 126 (Miami–Dade County Ct.1998) was:

"BORIS LA ROSA ODALYS LA ROSA
CITY FIRST MTG. CORP. ISAOA ATIMA."

Applying § 3–110(d) of the Florida Code, the court held, "the Check is payable to two or more persons and, as a matter of law, the payee designation on the Check is ambiguous as to whether it is payable to the persons alternatively."

**7.** In *Bijlani v. Nationsbank of Florida, N.A.*, 25 U.C.C. Rep.Serv.2d 1165 (Fla.Cir.1995), the payees were listed as follows:

"Bay Village Inc Michael
Bijlani & Ron Delo & Assoc
5411 Grenada Blvd
Coral Gables, FL 33133."

The court held that "[t]he multiple payee designation on the check is ambiguous as to whether it is payable to [the named stacked payees] jointly or alternatively" and that "Section 673.1101(4), Fla. Stat. . . . . [Florida's revised UCC rule], which applies to this case, reverses the prior rule."

*ican Fid. Fire Ins. Co.,* 39 Md.App. 614, 386 A.2d 1254 (1978). The court also rejected *Bank of America National Trust and Savings Assoc. v. Allstate Insurance Co.,* 29 F.Supp.2d 1129 (C.D.Cal.1998) as supporting the appellant's argument. The court explained that the court in *Allstate Insurance Company,* 29 F.Supp.2d at 1139, "required extrinsic evidence and determined that the check was unambiguous based [on] the custom and usage developed under the prior UCC provision, § 3–116;" however, it pointed out, " '[n]egotiability [should be] determined from the face, the four-corners, of the instrument without reference to extrinsic facts.' " (quoting *Participating Parts Associates v. Pylant,* 460 So.2d 1299, 1301, 40 U.C.C. Rep. Serv. 498 (Ala.Civ.App.1984) and *Holsonback v. First State Bank of Albertville,* 394 So.2d 381, 383, 30 U.C.C. Rep. Serv. 222 (Ala.Civ.App.1980)).

The appellant timely filed a Notice of Appeal to the Maryland Court of Special Appeals. This court issued a writ of certiorari before the intermediate appellate court considered the case. *Pelican National Bank v. Provident Bank of Maryland,* 369 Md. 659, 802 A.2d 438 (2002).

In this Court, the appellant argues that the Circuit Court erred when it granted the appellee's motion for summary judgment and denied its motion. In so arguing, it acknowledges the applicability to the case *sub judice* of § 3–110(d) and that, pursuant to that provision, the default rule with regard to the payment of checks with ambiguous multiple payee designations is that they are payable alternatively, rather than jointly. Nor does the appellant dispute that the default rule was changed from the prior law. Nevertheless, the appellant asserts, as it did in the Circuit Court, that the listing of multiple payees in stacked format on a check, without any terms or connectors, is not ambiguous. To the contrary, again as it did in the Circuit Court, the appellant maintains that the Court of Special Appeals resolved the matter in *Peoples National Bank,* where the court "held the bank liable [in that case] because the check was payable jointly, not payable in the alternative." (appellant's Brief at 7). According to the appellant, the rule enunciated by that case is

that checks containing multiple payees in "stacked" format are *per se* unambiguous and jointly payable.

The appellant also relies on *Allstate Insurance Co., supra* for the proposition that, notwithstanding the change in the language of the relevant U.C.C. provision, "the case law that existed under § 3–116 with respect to stacked payee designations on the checks (specifically including *Peoples Nat. Bank* ) remains firmly in place under § 3–110(d)." Rejecting the argument that the sentence in § 3–110(d) prescribing the default rule for ambiguity is dispositive of this case, the appellant submits:

> "The last sentence to § 3–110(d) *only applies if* the check is ambiguous. The second sentence to § 3–110(d) (which was applied in both the *Peoples Nat. Bank* and *Allstate Ins. Co.* decisions) remains firmly in place. The second sentence of § 3–110(d) provides that *'[i]f an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.'* (emphasis added). Because the Check in the present case was in the stacked payee designation format and 'payable to two or more persons not alternatively,'the Court need not reach the last sentence of § 3–110(d) which would only apply if the Check was ambiguous."

The appellee acknowledges that, prior to 1996, pursuant to § 3–116 and *People's National Bank,* checks with stacked payees, as is the case with the check *sub judice,* were deemed payable only jointly. Noting that "Maryland law regarding checks payable to multiple payees was changed with the adoption of the 1990 version of the UCC in 1996," in particular, the addition of a sentence, which provides that checks with an ambiguous multiple payee designation are payable in the alternative, it argues that, under that provision, checks listing multiple payees in stacked format without terms or connectors are ambiguous and thus, payable in the alternative. Consequently, the appellee contends that *People's National Bank,* having been decided under § 3–116, is inapposite to the case *sub judice.* Because § 3–110 expressly resolves the situation in which a check with multiple payees is ambiguous as to

whether it is alternatively or jointly payable, it asserts that the default rule enunciated in *People's National Bank* is abrogated.

## II.

The only issue that we must resolve is one of law, whether a check with stacked payees, unseparated by a term, punctuation, connector or symbol indicating joint or alternative payment, is ambiguous. Where a statutory provision of the U.C.C. purports to cover an area of the law, it is the language and the intent of the statute that will govern a conflict that arises within that particular area of law. *Hartford Fire Ins. Co. v. Maryland Nat'l Bank, N.A.*, 341 Md. 408, 413, 671 A.2d 22, 24 (1996) ("The rights and duties of drawers and depositary banks are governed by . . . Titles 3 and 4 of the Commercial Law Article, which are essentially the same as Articles 3 and 4 of the Uniform Commercial Code (U.C.C.)"); *see* § 1–301 of the Commercial Law Article.[8] This is, in other words, a matter of statutory interpretation,[9] the canons of which are well settled.

---

**8.** Maryland Code (1975, 2002 Replacement Volume) § 1–103 of the Commercial Law Article provides:

"Unless displaced by the particular provisions of Titles 1 through 10 of this article, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions, except that

"(a) the age of majority as it pertains to the capacity to contract is eighteen years of age; and

"(b) no person who has attained the age of eighteen years shall be considered to be without capacity by reason of age."

**9.** As indicated, this case was decided on summary judgment. This court has frequently stated the standard of review for a grant of summary judgment, "whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Baltimore, Inc.*, 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996); *Murphy v. Merzbacher*, 346 Md. 525, 530–31, 697 A.2d 861, 864 (1997); *Heat & Power Corp., Inc. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 592, 578 A.2d 1202, 1206 (1990) (citations omitted). "Whether summary judgment is properly granted as a matter of law is

This Court has often stated the paramount goal of statutory interpretation, to "ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Nationsbank v. Stine,* 379 Md. 76, 85, 839 A.2d 727, 732–33 (2003). The quest to ascertain legislative intent requires examination of the language of the statute as written and if, given the plain and ordinary meaning of the words used, the meaning and application of the statute is clear, we end our inquiry. *Comptroller of the Treasury v. Kolzig,* 375 Md. 562, 567, 826 A.2d 467, 469 (2003). It is also true, however, that:

> "While the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. Construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided."

*Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992) (Citations omitted). In seeking to "avoid constructions of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense," *Pak v. Hoang,* 378 Md. 315, 323, 835 A.2d 1185, 1189 (2003), we prefer an interpretation of the statute that avoids rendering any "part of the statute . . . meaningless or nugatory." *Toler v. Motor Vehicle Admin.,* 373 Md. 214, 220, 817 A.2d 229, 234 (2003) (citing *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 428 (2002)).

Enacted by Acts of 1996, ch. 1, § 2, as part of the 1996 revision to the Maryland Uniform Commercial Code, § 3–110(d) enunciates the rules for determining, objectively, the intent of a drawer with respect to an instrument made payable to multiple payees. Therefore, we must first examine § 3–110(d) to determine whether the stacked payee format in this

---

a question of law." *Engineering Management Services, Inc. v. Maryland State Highway Admin.,* 375 Md. 211, 229, 825 A.2d 966, 976 (2003).

case is an ambiguous multiple payee designation as contemplated by the Maryland Legislature when it enacted the statute. Section 3–110(d) provides:

"(d) If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively."

The Official Comment to that section provides further guidance regarding how to treat a check with multiple payees:

"An instrument payable to X or Y is governed by the first sentence of subsection (d). An instrument payable to X and Y is governed by the second sentence of subsection (d). If an instrument is payable to X or Y, either is the payee and if either is in possession that person is the holder and the person entitled to enforce the instrument. . . . If an instrument is payable to X and Y, neither X nor Y acting alone is the person to whom the instrument is payable. . . . The instrument is 'payable to an identified person.' " The "identified person" is X and Y acting jointly.

* * * * * *

"The third sentence of subsection (d) is directed to cases in which it is not clear whether an instrument is payable to multiple payees alternatively. In the case of ambiguity persons dealing with the instrument should be able to rely on the indorsement of a single payee. For example, an instrument payable to X and/or Y is treated like an instrument payable to X or Y."

■ Thus, § 3–110(d), confirmed by the explanation in the Official Comment, clearly and unambiguously enunciates the default rule, that, unless checks payable to multiple payees, are specifically and clearly made payable jointly or in the

alternative, they are ambiguous with respect to how they are to be paid and, therefore, are payable alternatively. Indeed, that is precisely what the last sentence of the section states. Confirmation is also supplied by an analysis of the statute that § 3–110(d) replaced.

Prior to 1996, the controlling provision with respect to multiple payee instruments was Maryland Code, (1975, 1992 Replacement Volume) § 3–116 of the Commercial Law Article. It provided:

"An instrument payable to the order of two or more persons

"(a) If in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;

"(b) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

Like § 3–110(d), § 3–116 is clear and unambiguous. Unlike § 3–110(d), which addressed three scenarios, however, it addressed only two scenarios, where the multiple payee instrument is payable in the alternative and where it is payable "not in the alternative." In the case of the former, § 3–116 provided for the payment of the instrument on the indorsement of any one of the payees. When, however, the instrument was payable "not in the alternative," that statute required the indorsement of all of the payees for negotiation. Essentially, therefore, under § 3–116, joint payment was the default—when the payment direction did not clearly make the instrument payable jointly, *i.e.* by using the word, "and" or an ampersand, or clearly make it payable in the alternative, *i.e.* by using, "or", "and/or", or a virgule,[10] then it was payable only jointly.

___

10. A virgule is a slash or diagonal line, represented by the symbol, "/". *Dynalectron Corp. v. Equitable Trust Co.*, 704 F.2d 737, 739 (4th Cir.,1983); *Kinzig v. First Fidelity Bank, N.A.*, 277 N.J.Super. 255, 649 A.2d 634, 636 (1994). Courts have interpreted the use of a virgule to separate multiple payee names as a manifestation of the drawer's intent to make the instrument alternatively payable; thus a virgule is, in

The Court of Special Appeals considered, and applied, § 3–116 in *Peoples Nat'l Bank v. American Fid. Fire Ins. Co.,* 39 Md.App. 614, 386 A.2d 1254 (1978). In that case, pursuant to a surety payment bond arrangement, the plaintiff, American Fidelity, arranged for payment from the United States of America, to cover the costs of an unpaid amount to a subcontractor. The United States Treasury issued the check, payable to multiple payees, as follows:

"Floors Inc.

American Fidelity Fire

Insurance Company

8400 Truck Way

Capitol Heights, Md. 20037"

*Id.* at 616, 386 A.2d at 1255. Floors Inc. received and indorsed the check, but failed to obtain the indorsement of the plaintiff insurance company before submitting it for payment. The defendant, Peoples National Bank, accepted the check and deposited the entire amount in the Floors, Inc. account. The plaintiff sued the defendant for conversion and the Circuit Court for Prince George's County granted it summary judgment. On appeal, the intermediate appellate court held:

"As previously stated, Md. Com. Law Code Ann. § 3–116 (1975) clearly provides that a check 'payable to the order of two or more persons ... (i)f not in the alternative ... may be negotiated, discharged or enforced only by all of them.' ... Since the check was not payable in the alternative, then it could not have been negotiated by less than all the payees. The fact that the defendant bank was unaware of the 'joint pay' agreement between the United States and the plaintiff does not change the result.

---

essence, the word "or" for purposes of applying the multiple payee provisions of the U.C.C. *E.g., Dynalectron,* 704 F.2d at 738 (holding that the Federal District Court in that case was correct when it held that " 'a virgule normally is used to separate alternatives,' " citing *Dynalectron Corp. v. Union First Nat'l Bank,* 488 F.Supp. 868, 869 (D.D.C.1980), and thus, a check listing multiple payees separated by a virgule was alternatively payable); *Kinzig,* 649 A.2d at 637.

" 'A payment upon a missing indorsement is equivalent to a payment over a forged indorsement.' *Federal Deposit Insurance Corp. v. Marine National Bank,* 431 F.2d 341 (5th Cir.1970). An instrument is converted when paid on a forged indorsement, Md. Com. Law Code Ann. § 3–419(1)(c) (1975). Since the bank paid the amount of the check with a missing indorsement, it converted the check."

*Id.* at 618–19, 386 A.2d at 1257. Thus, the court interpreted, and applied, the default rule prescribed by § 3–116, that, if the check is drawn payable to multiple payees, but "not in the alternative," it is payable jointly.

Other courts considering their state's equivalent of § 3–116, reach the same result. *See Moram Agencies, Inc. v. Farrell Transp., Inc.,* 35 U.C.C. Rep. Serv. 1236, (E.D.Pa.1982) (noting, referring to a check with multiple payees listed in stacked format, "[i]t was not made payable in the alternative and therefore the indorsement of both purported payees is necessary," citing *People's National Bank* ); *Midwest Industrial Funding v. First National Bank,* 973 F.2d 534, 537 (7th Cir.1992) (explaining that "[t]he general rule is that if there are two names on the check and the check is not payable in the alternative then the statute establishes that check is jointly payable" and, thus, under the "literal application of ¶ 3–116, the checks could be negotiated only by both [of the named parties]"); *Van Lunen v. State Central Savings Bank of Keokuk, Iowa,* 751 F.Supp. 145, 148 (S.D.Iowa 1990) (holding that the critical inquiry is not whether the drawer of the check intended to make a check containing multiple payees jointly payable and enunciating a preference to rely on the plain language of Iowa Code, § 554.3116(b) which clearly stated that " '[a]n instrument' ... payable to the order of two or more persons ... *if not in the alternative* is payable to all of them and may be negotiated ... only by all of them."); *Feldman Constr. Co. v. Union Bank,* 28 Cal.App.3d 731, 735, 104 Cal.Rptr. 912 (1972).

As we have seen, the General Assembly amended the Maryland U.C.C. in 1996, and, in the process substituted § 3–110(d) for § 3–116. In so doing, the General Assembly also changed

the default rule regarding checks with multiple payees. Rather than retaining the test requiring a determination of whether the check is unambiguously payable in the alternative, the General Assembly added a new test; by adding the last sentence to the statute, it established the default rule that if a check, drawn payable to multiple payees, does not clearly indicate the indorsements required for negotiation, and thus, is "ambiguous as to whether it is payable to two or more persons alternatively," the check is payable in the alternative and may be negotiated on the indorsement of any one of the payees.

■ Applying § 3–110(d) and this default rule to the facts of the case *sub judice* produces a clear result. The subject check was drawn to the order of three payees, listed in stacked format, with no grammatical connector, punctuation or symbol indicating their relationship or how the check was intended to be paid. Therefore, the check was neither clearly payable in the alternative, the payees not being connected by "or" or its equivalent, nor clearly payable jointly, the payees not being joined by "and" or its equivalent. It was, consequently, we hold, "ambiguous as to whether it is payable to the persons alternatively." Accordingly, we further hold, it was proper for the appellee to have negotiated the check without the indorsement of the appellant. The indorsement of any one of the payees was sufficient.

This interpretation of § 3–110(d) is consistent with the interpretation courts that have considered this issue have given their states' post–1990 version of the U.C.C. multiple payee statute. *J.R. Simplot, Inc. v. Knight,* 139 Wash.2d 534, 988 P.2d 955, 956 (1999) (since multiple payees separated by hyphen "did not unambiguously indicate whether they were to be paid jointly or in the alternative, RCW 62A.3–110 mandate[d] they were payable in the alternative"); *Hyatt Corporation v. Palm Beach National Bank,* 840 So.2d 300, 303 (Fla.D.Ct.App.2003); *Harder v. First Capital Bank,* 332 Ill. App.3d 740, 266 Ill.Dec. 770, 775 N.E.2d 610, 613 (2002)(checks listing multiple payees without grammatical connectors except

between names of two payees were ambiguous as to whether checks were payable jointly or in the alternative and thus, were payable in the alternative); *Meng v. Maywood Proviso State Bank*, 301 Ill.App.3d 128, 234 Ill.Dec. 92, 702 N.E.2d 258, 264 (1998) (cashier's check which did not include any language or markings, such as the word "and" or the word "or," regarding whether the check was payable alternatively or jointly was ambiguous, thus payable alternatively); *Allied Capital Partners, L.P. v. Bank One, Texas, N.A.*, 68 S.W.3d 51, 52–54 (Tx.Ct.App.2001)(checks which listed two payees that were not connected by "and" or "or" were ambiguous as to whether they were payable to two payees jointly or alternatively, and thus properly cashed on indorsement of only one payee); *Danco, Inc. v. Commerce Bank/Shore, N.A.*, 290 N.J.Super. 211, 675 A.2d 663, 665 (1996) (noting that, under U.C.C. § 3–110(d), "where any ambiguity between joint or alternative payees is present, the ambiguity should be resolved in favor of alternative construction"); *Dimmitt & Owens Financial, Inc. v. USA Glass & Metal, Inc.*, 1998 WL 852862 (N.D.Ill.1998)(holding that check without any indication as to whether it was intended to be payable alternatively or jointly was ambiguous as to whether it was made payable to either payee alternatively and could be paid to either payee individually); *But see, Bank of America Natl. Trust and Savings Assoc. v. Allstate Ins. Co.*, 29 F.Supp.2d 1129 (C.D.Cal.1998).

Some of these cases contrasted the interpretation of § 3–110(d) with that given former § 3–116. In *Allied Capital Partners, supra*, applying Texas U.C.C. § 3–110(d), which is identical to the Maryland provision, the court held that checks with stacked multiple payees and without punctuation marks or connecting terms indicating the drawer's intent with respect to whether they were payable jointly or alternatively, were ambiguous and payable alternatively. 68 S.W.3d at 54. It noted, however, with respect to the prior law:

"While it does appear that former section 3.116 would have required the checks in this case to be payable to and negotiable only by all of the payees listed, this is no longer

the case. Former section 3.116 provided that all checks which were not payable in the alternative ('or') were payable and negotiable only by all named payees. In contrast, section 3.110(d) now includes a third category of instruments: those that are ambiguous as to whether they are payable to the named payees alternatively and therefore payable to any of the named payees individually. Thus, Allied and American's reliance on cases decided before the enactment of section 3–110(d) is misplaced."

*Id.* (citations omitted)

Similarly, in *Meng, supra,* the Appellate Court of Illinois determined that a cashier's check, which listed multiple payees in stacked format was payable alternatively, reasoning that "[u]nder former section 3–116 of the Code, an instrument was presumed to be payable jointly where the instrument did not designate payment in the alternative.... Contrary to the former provision, the current section shifts the presumption to pay on an instrument in the alternative rather than jointly." *Id.* at 136, 234 Ill.Dec. 92, 702 N.E.2d at 264. The court added:

"We find, as a matter of law, that the designation of two payees on a cashier's check is ambiguous where no directives are stated on the checks to determine the manner of payment. In the present case, the cashier's check at issue names two payees but does not include any directions regarding whether the check is payable to the named persons alternatively or jointly. The subject cashier's check does not contain any language or markings to instruct the method of payment, such as the word 'and' or the word 'or.' Accordingly, section 3–110 provides that a check is payable to the persons alternatively. Therefore, in the present case, one named payee was sufficient to negotiate the cashier's check...."

*Id. See Harder v. First Capital Bank,* 332 Ill.App.3d 740, 266 Ill.Dec. 770, 775 N.E.2d 610, 614 (2002), in which, applying *Meng,* the court concluded that checks with stacked payee designations and "without any grammatical connector between the listed payees" were "ambiguous as a matter of law and,

therefore, were payable in the alternative with the indorsement of any single payee." *See also* Matthew Bender & Co. § 115.10 Multiple Payees: Mode of Indorsement (2003) (The revised section states that "if an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively thereby providing a definite rule which does not exist under the Code, reversing those cases which had held that where there was an ambiguity in the designation of multiple payees, they were joint payees.").

## III.

The appellant's reliance on *Peoples National Bank* is misplaced.[11] That case did not enunciate a bright-line rule, holding that checks containing unpunctuated stacked payees unambiguously direct that those checks be jointly payable. The court simply interpreted, and applied, § 3–116, concluding, in view of the clear direction provided, that a "check 'payable to the order of two or more persons . . . (i)f not in the alternative . . .' may be negotiated, discharged or enforced only by all of them," that the check at issue in that case was payable jointly, there being no clear statement that it was payable in the alternative. The court, as a matter of statutory interpretation, applied, in short, § 3–116's default rule for resolving ambiguities in the multiple payee situation.

Moreover, if the appellant is correct that *Peoples National Bank,* rather than simply interpreting § 3–116, held that a

---

**11.** *Peoples National Bank* should be contrasted with *Dynalectron,* both decided under § 3-116. In *Dynalectron,* the court determined that a virgule constituted punctuation that was generally used as a device to separate items in a list, 704 F.2d at 739, and, therefore, that checks made payable to multiple payees separated by a virgule were meant to be payable in the alternative. *Dynalectron* enunciated a bright line rule, that a "virgule" unambiguously means, or is the equivalent of, "or." *Id.* Unlike *Dynalectron, Peoples National Bank* enunciates no bright line rule regarding the proper payment of checks listing stacked payees left unseparated by a term or connectors. *Peoples National Bank* is simply a statutory construction case, in which the court determined that the statute clearly enunciated a default rule favoring joint payment.

check containing unpunctuated stacked multiple payees unambiguously directs joint payment of that check and that the *People's National Bank* determination in that case remains in full force and effect, notwithstanding the amendment of the Maryland U.C.C. to replace § 3–116 with present § 3–110(d), then the third sentence of the latter provision is largely superfluous. That interpretation effectively thwarts the legislative intent to change the presumption of joint payment, mandated by § 3–116, to one of alternative payment, as contemplated by the third sentence of § 3–110(d).

While decided on facts similar to those in the case *sub judice* and pursuant to the California equivalent of § 3–110(d), *Bank of America v. Allstate, supra,*[12] on which the appellant also heavily relies, is not persuasive. First, *Allstate* did not purport to apply to all checks made payable to multiple payees listed in a stacked format. 29 F.Supp.2d at 1139 ("[T]he Court need not determine whether all checks with stacked payee designations are unambiguous."). Furthermore, the issue in *Allstate* was different from the issue in the case *sub judice*. There, the issue was not whether the check had been cashed without all necessary indorsements, rather, it was whether the drawer of the check was negligent in issuing it

---

**12.** In *Bank of America Natl. Trust and Savings. Assoc. v. Allstate Ins. Co.,* 29 F.Supp.2d 1129 (C.D.Cal.1998), the plaintiff, Bank of America, had a security interest in a building, insured by Allstate, that was damaged in a fire. Allstate issued a check to cover the damages, payable as follows:

> Chuk N. Tang & Rosa C. Tang, HWJT
> Bank of America
> P.O. Box 5696
> Diamond Barca CA

*Id.* at 1132. The Tangs indorsed the check but failed to seek the indorsement of the Bank of America prior to negotiating the check and retaining its proceeds. *Id.* Bank of America filed a Complaint against Allstate, claiming, *inter alia,* that the latter breached the insurance policy when it issued the check to both the Tangs and Bank of America in such a way that it was ambiguous as to whether the check was payable jointly or alternatively. Allstate argued, in response, that the stacked payees format unambiguously directed that the check be paid jointly. *Id.* at 1137.

without clear direction as to whether it was payable jointly or in the alternative. In deciding it was not, the court relied heavily on the fact that the memo line indicated that the check constituted "SETTLEMENT OF YOUR RENTAL DWELL-ING LOSS CAUSED BY FIRE ON 11/29/93." *Id.* at 1140. Furthermore, important to the court was testimony from a Bank of America official that she could discern "from the face of the check that Bank of America was a third party beneficiary under a fire policy and that the check is payable jointly rather than in the alternative." *Id.* Based primarily upon this evidence, the court determined that the check was not ambiguous, but rather, because it was clear from its four corners that the check was an insurance settlement check, the bank to which it was submitted for payment should have realized that the drawer intended that each named payee indorse the instrument before it could be negotiated. *Id.* at 1139–40.

 Section § 3–110 (d) effected a significant shift in policy from that reflected in its predecessor, § 3–116. *See Public Citizen, Inc. v. First Nat'l Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538, 544 (1996) (stating that W. Va.Code § 46–3–110(d), the West Virginia equivalent of § 3–110(d), added in 1993, "dramatically changed the law with respect to the problem of the ambiguous payees"); *Allied Capital Partners, supra,* 68 S.W.3d at 54 (noting that "reliance on cases decided before the enactment of section 3.110(d) is misplaced"); Reitman and Weisblatt, Checks, Drafts & Notes § 115.10[2] (Bender 1977, 2002 Supp.) (stating that U.C.C. § 3–110(d) "provid[es] a definite rule which did not exist under the [prior] Code, reversing those cases which [held] that where there was an ambiguity, in the designation of multiple payees, they were joint payees"). Furthermore, as the appellee points out, the use of extrinsic evidence of custom and practice in the banking industry to determine whether a check payable to multiple payees is ambiguous undermines, if not totally thwarts, the purpose and function of § 3–110(d).[13] The

---

13. Although not articulated as such, we believe this to be the thrust of the reason why the trial court, indicating that it must be "determined

appellee's explanation as to why this is true is quite persuasive:

"The obvious purpose of § 3–110(d) is to provide a bright-line rule for how checks with ambiguous payee designations should be treated. That purpose would be thwarted if it were necessary to resort to extrinsic evidence of custom and practice in order to determine whether a check was payable jointly or affirmatively. To avoid the need to resort to extrinsic evidence, § 3–110(d) sets forth a simple and straight-forward rule: unless the check on its face is unambiguously payable jointly, it is deemed payable alternatively. The Court in *Allstate Ins. Co.* ignored the function of § 3–110(d) by resorting to extrinsic evidence to determine whether the check was ambiguous. The issue of whether an ambiguity exists is a legal issue to be determined by the court. . . . By resorting to extrinsic evidence to determine whether or not the check was ambiguous, the Court in *Allstate Ins. Co.* violated the cardinal rule of contract interpretation that extrinsic evidence may only be used to interpret an ambiguous contract."

The appellee's brief at 18–19.

Thus, if we were to follow *Allstate*, § 3–110(d) would have little, or no, effect, despite the Legislature's having enunciated clear rules for determining the indorsement requirements for the negotiation of multiple payee instruments.

JUDGMENT AFFIRMED, WITH COSTS.

---

from the face, the four corners without reference to extrinsic facts," (quoting *Participating Parts Associates v. Pylant,* 460 So.2d 1299, 1300, 40 U.C.C. Rep. Serv. 498 (Ala.Civ.App.1984)), refused to consider extrinsic evidence to decide the ambiguity question.