860 A.2d 886

## THE ARUNDEL CORPORATION

v.

**Richard M. MARIE and Olivia Green, Personal Representatives of the Estate of Camille S. Marie, Deceased.**

No. 1, Sept. Term, 2004.

Court of Appeals of Maryland.

Nov. 9, 2004.

490

James E. Carbine (James E. Carbine, P.C., on brief), Baltimore, for appellant.

Jeffrey P. Reilly (Jennifer J. Coyne of Miles & Stockbridge, P.C., on brief), Towson, for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

The issues before us are (1) whether a right of first refusal that is clearly void under the traditional common law rule against perpetuities is saved by virtue of the legislative modification of that rule contained in Maryland Code, § 11–103 of the Estates and Trusts Article, and (2) if not, whether we should save it by modifying the traditional common law rule. The Circuit Court for Baltimore County held that the right was not saved under the statute. We agree with that conclusion and shall decline the invitation to modify the common law rule.

## BACKGROUND

On July 28, 1960, Camille and Mary Marie conveyed a parcel of land in Baltimore County to the Arundel Corporation. The parcel conveyed was part of a larger tract owned by the Maries. In consideration of one dollar, the deed gave Arundel a right of first refusal as to the part that the Maries retained, identified by a metes and bounds description but commonly known as 3121 Old Court Road. Specifically, the Maries agreed that, whenever they or their heirs, executors, administrators or assigns decided to sell that parcel, they would offer it to Arundel, its successors and assigns, for a price of $2,250 per acre.

On November 22, 2002, Camille Marie, having survived his wife, Mary, died intestate, and their children, Olivia Dulany Green and Richard Mercer Marie, were appointed as personal representatives for the estate. On September 8, 2003, the personal representatives, seeking to sell the property free of the right of first refusal, wrote to Arundel and, advising that, in their view, the right of first refusal was void under the rule against perpetuities, requested that Arundel disclaim its inter-

est in the Marie property. Although there is no indication in the record that the personal representatives were about to enter into an agreement to sell the property to anyone else, they had made clear in the First and Interim Account filed with the Orphan's Court for Baltimore County their intent to sell it and to distribute all of the estate assets as soon as that sale was consummated.

Arundel refused to disclaim its interest, averring that (1) in light of the documented decision by the personal representatives to sell the property, the right of first refusal had vested and was therefore currently enforceable, and (2) even though the right might be void under the common law version of the rule against perpetuities, the common law rule had been "abrogated" by § 11–103 and the vesting of the right was in conformance with the statute. Arundel expressed its intent to exercise its right of first refusal and indicated that it wished to close on its interest in the Marie property within fifteen days.

When the personal representatives rejected Arundel's offer, Arundel filed suit in the Circuit Court for Baltimore County, seeking specific performance. As noted, the court held that the right of first refusal was void under the common law rule and could not be saved under the plain language of the statute, and, on that ground, granted summary judgment for the personal representatives. Arundel appealed, and we granted *certiorari* on our own initiative while the case was pending in the Court of Special Appeals.

Arundel concedes that the traditional common law rule against perpetuities invalidates the right of first refusal in this case. *See Ferrero Constr. v. Dennis Rourke Corp.*, 311 Md. 560, 536 A.2d 1137 (1988). It argues, however, that (1) the right is enforceable under the "wait and see" provision of the statute, and (2) if it is not, we should modify the common law rule to adopt the kind of "wait and see" approach that would allow the right to be effective and enforceable. That approach, Arundel argues, is the modern trend, evidenced by its adoption, in one form or another, by the National Conference of Commissioners on Uniform State Laws in its proposed

Uniform Statutory Rule Against Perpetuities and in the Restatement (Second) of Property: Donative Transfers § 1.4. *See*, in particular, Comment a. to that section. The personal representatives respond that the "wait and see" provision of § 11–103 does not apply to the situation before us and that the statute effectively precludes us from modifying the common law rule.

## DISCUSSION

Although building on more ancient antecedents, the rule against perpetuities developed through a series of six landmark English cases, spanning about a century-and-a-half, beginning with *Duke of Norfolk's Case*, 3 Ch. Cas. 1, 22 Eng. Rep. 931 (1682) and continuing with *Lloyd v. Carew*, 1 Eng. Rep. 93 (H.L.1697); *Stephens v. Stephens*, 26 Eng. Rep. 751 (Ch. 1736); *Long v. Blackhall*, 101 Eng. Rep. 875 (K.B.1797); *Thellusson v. Woodford*, 32 Eng. Rep. 1030 (Ch. 1805); and *Cadell v. Palmer*, 6 Eng. Rep. 956 (H.L.1833). *See* the comprehensive discussion in 10 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 71.02[2] (Michael Allan Wolf ed., 2003). This Court gave explicit recognition and effect to the Rule as early as 1826. *See Dallam v. Dallam*, 7 H. & J. 220, 236–37 (1826), where the Court regarded the Rule as established by "more than fifty adjudged cases," none of which were cited. *See also Newton v. Griffith*, 1 H. & G. 111, 115–16 (1827).

Early statements of the Rule were cast in the difficult verbiage common in those days. In *Barnum v. Barnum*, 26 Md. 119, 171 (1866), for example, the Court described the Rule as follows:

> If an estate be so limited as by possibility to extend beyond a life or lives in being at the time of its commencement, and twenty-one years and a fraction of a year (to cover the period of gestation) afterwards, during which time the property would be withdrawn from the market, or the power over the fee suspended, it is a perpetuity and void as against the policy of the law, which will not permit property to be inalienable for a longer period.

Perhaps because the Rule was designed to promote the alienability of property, courts, including this Court, occasionally confused or conflated it with a companion rule, resting on the same public policy, that unreasonable restraints on alienation are also void. In *Commonwealth Realty v. Bowers*, 261 Md. 285, 297, 274 A.2d 353, 359 (1971), we cautioned against confusing the two principles, noting that, while the rule against unreasonable restraints on alienation was indeed concerned with the *duration* of limitations on alienation, the rule against perpetuities dealt with the time of *vesting* of the interest at issue. Earlier, in *Fitzpatrick v. Mer.-Safe, Etc.*, 220 Md. 534, 541, 155 A.2d 702, 705 (1959), we made clear that the Rule "is not a rule that invalidates interests which last too long, but interests which vest too remotely," and, in that regard, recited a more concise version of the Rule: " '[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' " (quoting Gray, THE RULE AGAINST PERPETUITIES, § 201 (4th ed.1942)). That articulation of the Rule is the one we have since applied. *See, e.g., Park Station v. Bosse*, 378 Md. 122, 134–35, 835 A.2d 646, 653–54 (2003); *Dorado v. Broadneck*, 317 Md. 148, 152–53, 562 A.2d 757, 759 (1989); *Ferrero Constr. Co. v. Dennis Rourke Corp.*, 311 Md. 560, 565, 536 A.2d 1137, 1139 (1988); *Commonwealth Realty v. Bowers*, 261 Md. 285, 296–97, 274 A.2d 353, 358–59 (1971); *Murphy v. Mer.-Safe Dep. Co.*, 236 Md. 282, 287, 203 A.2d 889, 892 (1964).

By voiding future interests that might vest too remotely, the rule against perpetuities facilitates the alienability of property, helps prevent uncertain title, and encourages owners to make effective use of their property. *Ferrero, supra*, 311 Md. at 572–73, 536 A.2d at 1143. Historically, the Rule was usually applied to grants or devises made by deed or by will. *See, e.g., Perkins v. Iglehart*, 183 Md. 520, 39 A.2d 672 (1944); *Bowerman v. Taylor*, 126 Md. 203, 94 A. 652 (1915); *Graham v. Whitridge*, 99 Md. 248, 57 A. 609 (1904). In recent years, however, we have extended the Rule to include equitable rights in real property created by contract and enforceable by specific performance. *See Dorado, supra*, 317 Md. 148, 562

A.2d 757 (contract for sale of land); *Ferrero, supra,* 311 Md. 560, 536 A.2d 1137 (right of first refusal to purchase an interest in property); *Bowers, supra,* 261 Md. 285, 274 A.2d 353 (option to purchase land).

 In order to determine whether a conveyed interest violates the common law Rule, a court first must construe the language of the conveyance "in precisely the same manner as if there was no rule against perpetuities, and as if the intention expressed by the words may lawfully be carried out." *Bowerman v. Taylor,* 126 Md. 203, 209, 94 A. 652, 653 (1915). Then, "when, apart from any consideration of the validity of this intention, we have arrived at the true construction of the deed, the rule against perpetuities, which is one of law and not of interpretation, should then be applied to the objects so ascertained." *Id.* The Rule is applied to determine whether the interest could vest beyond the permissible period, based on the *possibility* of events, not *actual* events. *In re Estate of Snyder v. Denit,* 195 Md. 81, 89, 72 A.2d 757, 760 (1950); *Ortman v. Dugan,* 130 Md. 121, 124, 100 A. 82, 83 (1917).

Due to the harsh effect of the common law Rule and some of the often absurd fictional possibilities that crept into its construction,[1] both Parliament in England and State legislatures in the United States looked for ways of limiting either the

---

1. In actually determining the permissible period for vesting under the common law Rule, courts were required to consider all possibilities that existed at the beginning of the period, however remote they might be. One of those possibilities emanated from the presumption, thought dubious at the time but perhaps now less so, that men and women were capable of conceiving children as long as they were alive—long after any reasonable medical prospect of fertility. On that presumption, the courts were required to assume that, if the measuring life was the child of someone already 90 or 100 years old when the measuring period began, that child might not yet be conceived and would therefore not be a life in being. If the measuring life was the spouse of a named person, who, as in the first example, was already 90 or 100 years old when the measuring period began, the courts had to assume that the person may yet marry someone not yet conceived when the permissible period commenced. These rather strained prospects were not just the musings of mischievous law professors intended to excite the minds of novices to the great paper chase, but actually served to invalidate otherwise valid and reasonable conveyances or devises.

Rule or its application. *See* Laurence M. Jones, *Reforming the Law—The Rule Against Perpetuities,* 22 MD. L.REV. 269 (1962). In 1830, the New York legislature rewrote the Rule to limit the allowable period to two lives in being plus a period of minority. *Id.* at 278 (citing New York Rev. Stats. c. 1, Tit. 2 §§ 14–21, 23, 24, 36–40 and c. 4, Tit. 4). A number of other States tried that approach as well, but, when it proved troublesome, those States, including New York, either abandoned or modified it. *Id.* at 278. The Maryland General Assembly declined to make such a substantive revision but, over time, created a number of discrete statutory exceptions to the application of the Rule, for things such as devises or bequests designed to maintain burial lots (1906 Md. Laws 59), the transfer of property by will or testament from one charitable corporation to another (1908 Md. Laws 569), trusts for charitable purposes (1931 Md. Laws 453), and trusts for employee benefits (1957 Md. Laws 633).

In 1960, the General Assembly passed the statute before us in this case, to "modify and clarify the Rule against Perpetuities, concerning generally the disposition of property . . . passing by will or deed of trust where the ultimate taker is to be determined upon the death of certain living persons." 1960 Md. Laws 44. That statute, with only stylistic changes, now exists as § 11–103(a) of the Estates and Trusts Article and reads as follows:

> In applying the rule against perpetuities to an interest limited to take effect at or after the termination of one or more life estates in, or lives of, persons in being when the period of the rule commences to run, the validity of the interest shall be determined on the basis of facts existing at the termination of one or more life estates or lives. In this section an interest which must terminate not later than the death of one or more persons is a "life estate" even though it may terminate at an earlier date.

The 1960 statute was not the independent creation of the Maryland General Assembly. When the Legislature acted, it had a number of models from which to choose. In 1947, Pennsylvania had passed a broad "wait and see" statute that

postponed the determination of the validity of a future interest until the end of the period allowed by the common law Rule. 1947 Pa. Laws 100 § 4. Still in force, the Pennsylvania law provides that "[u]pon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events any interest not then vested and any interest in members of a class the membership of which is then subject to increase shall be void." Pa. Stat. Ann. tit. 20 § 6104.

Massachusetts took a different and more limited approach. Under the Massachusetts statute, if an interest was limited to vest at or after the end of a life estate or a life in being, one could "wait" until the end of that life estate or life and then look to "see" if existing facts would validate or invalidate the interest under the traditional rule against perpetuities, rather than having to give credence to all of the various possibilities that may exist at the time the interest was created.[2]

Although the drafters of the Massachusetts law "preferred, on principle and as a matter of logic, the broader scope of the Pennsylvania statute," they were concerned that the Pennsylvania statute created too much "uncertainty and need for judicial construction." W. Barton Leach, *Perpetuities Legislation, Massachusetts Style*, 67 Harv. L.Rev. 1349, 1353 (1954) (Professor Leach was one of the drafters of the Massachusetts statute). Indeed, the Pennsylvania statute had been criticized for the difficulty it posed for ascertaining measuring lives and because it prevented early determination of an interest's validity. 10 Richard R. Powell, Powell on Real Property § 75A.02[1][b] nn. 17, 22–22.1 (Michael Allan Wolf ed., 2003) (citing Lewis M. Simes, *Is the Rule Against Perpetuities Doomed? The "Wait and See" Doctrine*, 52 Mich. L.Rev. 179

---

2. Mass Gen. Laws Ann. ch. 184A, § 1 (West 1989). *See* 10 Richard R. Powell, Powell on Real Property § 75A.02[2][e] (Michael Allan Wolf ed., 2003). Three other states—Connecticut, Florida and Maine—also adopted language identical to the Massachusetts statute. *Id.* Massachusetts has since replaced its "wait and see" statute with the Uniform Statutory Rule Against Perpetuities. 1989 Mass. Acts 668 (enacting Mass. Gen. Laws ch. 184A, §§ 1–11).

(1953), Phipps, *The Pennsylvania Experiment in Perpetuities,* 23 TEMPLE L.Q. 20, 186 (1949), and Lawrence W. Waggoner, *Perpetuity Reform,* 81 MICH. L.REV. 1718 (1983)).

In order to address those concerns, the Massachusetts drafters penned a more limited statute that would require less judicial construction. W. Barton Leach, *Perpetuities Legislation, Massachusetts Style,* 67 HARV. L.REV. 1349, 1353 (1954). Their "wait and see" approach was to apply only when an interest was set to vest upon the occurrence of one or more contingencies at or after the end of a life estate or life of a person in being, which, in all cases, was a determinable event. *Id.* at 1357–60. Professor Leach described the statute's application to "one or more life estates in, or lives of" persons in being as follows:

The life estate case is obvious. *T* bequeaths a fund in trust to pay the income to *A* for life, and then to pay the principal on various contingencies to *A*'s issue. The [statute] requires that the validity of the gift to issue be determined on the basis of facts existing at the end of *A*'s life estate. But there are other cases involving postponement for lives where technically there is no "life estate." For instance: *Discretionary trust:* A fund in trust to pay so much of the income, and in such shares, as the trustee shall determine among the children of testator during their lives, and to accumulate any balance of income, and then to distribute the principal on various contingencies. It is doubtful whether the children would be held to have "life estates" in this situation, but they are "lives of persons in being" under the [statute]. Therefore the validity of the gift of principal is determined on the basis of facts existing at the death of *T*'s children.

*Accumulation:* A trust to accumulate income during the life of testator's widow and then pay principal with accumulations to testator's issue on various contingencies. In this case, the widow does not have a "life estate" in any usual sense; but she is a "life of a person in being" and the gifts of principal are determined on the facts existing at her death.

*Executory devise: T* devises to *A* in fee, but if *A* shall die without leaving issue surviving him, then to other persons upon various contingencies. *A* does not have a "life estate"; but under [the statute] the validity of the future interest is determined on the basis of facts existing at his death.

*Id.* at 1358–59 (footnotes omitted). Thus, Massachusetts chose to postpone determination of the validity of a future interest for a shorter period of time than the Pennsylvania statute, choosing a future point in time that was easily ascertainable (the end of a life estate or life) and for which there was "no substantial reason" not to wait, since the interests at stake could not vest until at or after the termination of the particular life estate or life in any event. *Id.* at 1358.

There was yet another variant, adopted in Vermont, Kentucky, and Washington, which combined the "wait and see" principle with a *cy pres* approach. Professor Jones described those statutes as allowing a court "to reform any interest which might violate the Rule so as to approximate, within the limits of the Rule, the intention of the creator" and providing that "in determining whether an interest violates the Rule actual rather than possible events are considered." Laurence M. Jones, *Reforming the Law—The Rule Against Perpetuities,* 22 MD. L.REV. 269, 280 (1962).

Having these various alternatives from which to choose, the Maryland General Assembly opted for the limited "wait and see" approach developed in Massachusetts. The 1960 Maryland statute was clearly patterned on, and, indeed, was identical to, the then-existing Massachusetts version. The 1960 law was revised stylistically in 1969, as part of a general revision of the estate and trust laws recommended in the Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland (the "Henderson Commission," as it became known, was named after its chairman, William L. Henderson, formerly the Chief Judge of this Court). *See* SECOND REPORT OF THE GOVERNOR'S COMMISSION TO REVIEW AND REVISE THE TESTAMENTARY LAW OF MARYLAND (Dec. 5, 1968). It was revised again in 1974 when the Estates and

Trusts Article was enacted as part of the more general code revision effort.

Other States, more recently, have taken yet another approach. In 1986, the National Conference of Commissioners on Uniform State Laws published a proposed Uniform Statutory Rule Against Perpetuities (USRAP), under which a future interest would be valid if either (1) it complies with the common law rule against perpetuities, or (2) it vests or terminates within ninety years after its creation. Although it appears that more than twenty States have adopted USRAP,[3] Maryland has not done so and, indeed, in 1989 and 1990, rejected proposals by the Maryland State Bar Association to further dilute the existing law by making the rule against perpetuities inapplicable to interests, such as rights of first refusal, created by contract for more than nominal consideration.[4]

■■ Noting that § 11–103(a) is a remedial statute, intended to ameliorate some of the absurdities implicit in the common law rule against perpetuities and to save otherwise valid conveyances and devises, Arundel urges us to give the

---

3. *See* Ariz.Rev.Stat §§ 14–2901–2906; Cal.Prob Code §§ 21200–21225; Colo.Rev.Stat Ann §§ 15–11–1101 to –1107; Conn Gen Stat Ann §§ 45a–490 to –496; D.C.Code Ann §§ 19–901 to –907; Fl.Stat Ann. § 689.225; Ga Code Ann. §§ 44–6–200 to –206; Haw.Rev Stat. §§ 525–1 to –6; Ind Code Ann §§ 32–17–8–1 to –6; Kan Stat Ann. §§ 59–3401 to –3408; Mass.Gen Laws ch. 184A, §§ 1–11; Mich Comp Laws Ann §§ 554.71–.78; Minn Stat.Ann. §§ 501A.01–.07; Mont Code Ann §§ 72–2–1001 to –1007; Neb Rev.Stat §§ 76–2001 to –2008; Nev Rev.Stat. §§ 111.103–.1039; N.M.Stat Ann §§ 45–2–901 to –906; N.C.Gen Stat §§ 41–15 to –22; N.D.Cent.Code §§ 47–02–27.1 to .5; Or.Rev.Stat. §§ 105–950 to –.975; S.C.Code Ann §§ 27–6–10 to –80; Tenn Code Ann §§ 66–1–201 to –208; Va Code Ann §§ 55- 12.1 to .6; W.Va.Code §§ 36–1A–1 to –8.

4. In 1989 and 1990, the Real Property, Planning, and Zoning Section of the Maryland State Bar Association supported bills (1989 H.B. 524 and 1990 H.B. 838) which would have made the common law rule against perpetuities inapplicable to any contract, option, or deed given for consideration other than nominal consideration that pertains to any right with respect to the use, possession, transfer, or ownership of real or personal property and provided for the termination of future interests at certain specific times. The bills did not pass.

statute a liberal and beneficent construction. Although reme-
dial statutes are, indeed, to be given a liberal construction, the
predominant goal of the Court is to ascertain and implement
the legislative intent, and the ascertainment of that intent is
done, in the first instance, by considering the language used
by the Legislature and giving that language a plain and
common sense meaning. *Baltimore County v. RTKL,* 380 Md.
670, 678, 846 A.2d 433, 437–38 (2004). If there is no ambiguity
in that language, either inherently or by reference to other
relevant laws or circumstances, the inquiry as to legislative
intent ends; we do not then need to resort to the various, and
sometimes inconsistent, external rules of construction, for
" 'the Legislature is presumed to have meant what it said and
said what it meant.' " *Toler v. MVA,* 373 Md. 214, 220, 817
A.2d 229, 233 (2003) (quoting *Witte v. Azarian,* 369 Md. 518,
525, 801 A.2d 160, 165 (2002)). *See also Pelican v. Provident,*
381 Md. 327, 336, 849 A.2d 475, 480 (2004).

When the Legislature first enacted the statute at
issue in 1960, and when it had the opportunity to re-examine
the statute in 1969, 1974, 1989, and 1990, it had a variety of
options from which to choose. In 1960, 1969, and 1974, it had
before it the Massachusetts, Pennsylvania, and Vermont ap-
proaches, which, as noted, were all quite different. By 1989, it
had as well the USRAP and the approach offered by the Real
Property, Planning, and Zoning Section of the Maryland State
Bar Association. It chose in each instance to adopt or to
retain the Massachusetts approach. In doing so, it elected to
modify the strict common law Rule and apply a "wait and see"
rule *only* when the interest in question could not vest prior to
the end of a life estate or a life in being. The statute could
not be clearer in that regard. The problem for Arundel is
that the right of first refusal was not limited to vest at the end
of any life estate or any life in being.[5] The Maries could have

---

**5.** If we were to resort to any external rule of construction, it would be
the long established one in Maryland that "it is not to be presumed that
the Legislature intended to make any innovation upon the common law,
further than the case absolutely require[s]" and that "[t]he law rather

elected to sell the property and thus triggered the right of first refusal at any time during their lives or the life of the survivor of them. That is why it is not saved by the statute. On the other hand, of course, it was always possible that neither the Maries nor any of their heirs alive at the time the right was conveyed would decide to sell the property, and that is why the conceivable vesting is too remote and the right of first refusal is void under the common law Rule.

▪ Arundel alternatively urges that, if § 11–103(a) does not save the right of first refusal, we should change the common law Rule by adopting the "wait and see" approach advocated by the Restatement of the Law (Second) of Property, Donative Transfers § 1.4, especially since so many States now follow some variation of a more extensive "wait and see" approach. Arundel argues that, like common law interspousal tort immunity, which the Court recently abrogated in *Bozman v. Bozman,* 376 Md. 461, 830 A.2d 450 (2003), the common law rule against perpetuities, at least when applied to commercial transactions, is impractical and irrational—that it is a "vestige of the past" that should be changed by the Court and not left up to the Legislature.

▪ In *Felder v. Butler,* 292 Md. 174, 183, 438 A.2d 494, 499 (1981), we observed that, "[a]lthough empowered to change common law rules in light of changed conditions, the Court has always recognized that declaration of public policy is normally the function of the legislative branch of government" and that "[t]he Court has therefore declined to alter a common law rule in the face of indications that to do so would be contrary to the public policy of the State, as declared by

infers that the Act did *not* intend to make any alteration *other* than what is *specified,* and besides *what has been plainly pronounced." Hooper v. Mayor & C.C. of Balto.,* 12 Md. 464, 475 (1859) (quoting from DWARRIS ON STATUTES at 695)(emphasis in original). *See also State v. North,* 356 Md. 308, 312, 739 A.2d 33, 35 (1999). As we pointed out in *North,* referencing *Anderson v. State,* 61 Md.App. 436, 449, 487 A.2d 294, 300 (1985), and earlier in *Hardy v. State,* 301 Md. 124, 131–32, 482 A.2d 474, 478 (1984), that rule of construction has a Constitutional basis in Article 5 of the Maryland Declaration of Rights.

the General Assembly of Maryland." *See also Harrison v. Mont. Co. Bd. of Educ.*, 295 Md. 442, 460, 456 A.2d 894, 903 (1983); *Halliday v. Sturm*, 368 Md. 186, 208–09, 792 A.2d 1145, 1158–59 (2002) and cases cited there.

As we said in *Halliday*, though for a different reason, "[t]hat caution is especially appropriate here." *Halliday, supra*, 368 Md. at 209, 792 A.2d at 1159. Not only has the Legislature declined invitations to modify the rule as Arundel wishes, but it has affirmatively codified the common law Rule, subject only to the exceptions approved by it in the form of statutes. As part of the 1969 comprehensive revision of the estate and trust laws, the Legislature consolidated into what is now § 11–102 of the Estates and Trusts Article the various exceptions to the Rule that had previously been scattered in other sections. In doing so, it declared that, subject to § 4–409 of the article, dealing with legacies for charitable use, § 11–103, and the exceptions specified in § 11–102, "the common law rule against perpetuities as now recognized in the State is preserved." That decision, to retain the common law Rule but statutorily modify its application, followed the recommendation of the Governor's Commission to Review and Revise the Testamentary Law of Maryland. *See* SECOND REPORT OF THE GOVERNOR'S COMMISSION TO REVIEW AND REVISE THE TESTAMENTARY LAW OF MARYLAND 148–49 (Dec. 5, 1968). Whether or not that legislative statement would, in fact, preclude us from any substantive modification of the Rule through common law development, it certainly constitutes a declaration of public policy that we are unwilling to disturb.

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED, WITH COSTS.